# BUTNER *v.* UNITED STATES ET AL.

No. 77–1410.   Argued November 27, 1978—Decided February 21, 1979

Stevens, J., delivered the opinion for a unanimous Court.

*J. Steven Brackett* argued the cause for petitioner. With him on the brief were *J. Richardson Rudisill, Jr.,* and *William E. Butner, pro se.*

*Allan A. Ryan, Jr.,* argued the cause for the United States. On the brief were *Solicitor General McCree, Assistant Attorney General Ferguson, Stuart A. Smith, Crombie J. D. Garrett,* and *Carleton D. Powell. Joe N. Cagle, pro se,* argued the cause for respondents Cagle et al. With him on the brief were *J. Carroll Abernethy, Jr.,* and *James M. Gaither, Jr.*

Mr. Justice Stevens delivered the opinion of the Court.

A dispute between a bankruptcy trustee and a second mortgagee over the right to the rents collected during the period between the mortgagor's bankruptcy and the foreclosure sale of the mortgaged property gave rise to the question we granted certiorari to decide. 436 U. S. 955. That question is whether the right to such rents is determined by a federal rule of equity or by the law of the State where the property is located.

On May 14, 1973, Golden Enterprises, Inc. (Golden), filed a petition for an arrangement under Chapter XI of the Bank-

ruptcy Act. 11 U. S. C. §§ 701–799. In those proceedings, the bankruptcy judge approved a plan consolidating various liens on North Carolina real estate owned by Golden. As a result, petitioner acquired a second mortgage securing an indebtedness of $360,000.[1] Petitioner did not, however, receive any express security interest in the rents earned by the property.

On April 18, 1974, the bankruptcy judge granted Golden's motion to appoint an agent to collect the rents and to apply them as directed by the court. The order of appointment provided that the money should be applied to tax obligations, payments on the first mortgage, fire insurance premiums, and interest and principal on the second mortgage. There is no dispute about the collections or payments made pursuant to that order.

The arrangement plan was never confirmed. On February 14, 1975, Golden was adjudicated a bankrupt, and the trustee in bankruptcy was appointed. At that time both the first and second mortgages were in default. The trustee was ordered to collect and retain all rents "to the end that the same may be applied under this or different or further orders of [the bankruptcy] [c]ourt." App. 342a–343a.

After various alternatives were considered, and after the District Court refused to confirm a first sale, the properties were ultimately sold to petitioner on November 12, 1975, for $174,000. That price was paid by reducing the estate's indebtedness to petitioner from $360,000 to $186,000.

As of the date of sale, a fund of $162,971.32 had been accumulated by the trustee pursuant to the February 14 court order that he collect and retain all rents. On December 1,

---

[1] Originally, the second mortgage was held by petitioner along with Robert L. McKaughn, Jr., and Jack Sipe Construction Co. Subsequently, McKaughn and the Sipe Construction Co. assigned all of their rights in the indebtedness and deeds of trust to petitioner, thus making him the sole second mortgagee.

1975, petitioner filed a motion claiming a security interest in this fund and seeking to have it applied to the balance of the second mortgage indebtedness. The bankruptcy judge denied the motion, holding that the $186,000 balance due to petitioner should be treated as a general unsecured claim.

The District Court reversed. It recognized that under North Carolina law, a mortgagor is deemed the owner of the land subject to the mortgage and is entitled to rents and profits, even after default, so long as he retains possession. But the court viewed the appointment of an agent to collect rents during the arrangement proceedings as tantamount to the appointment of a receiver. This appointment, the court concluded, satisfied the state-law requirement of a change of possession giving the mortgagee an interest in the rents; no further action after the adjudication in bankruptcy was required to secure or preserve this interest.

The Court of Appeals reversed and reinstated the disposition of the bankruptcy judge. *Golden Enterprises, Inc.* v. *United States*, 566 F. 2d 1207. The court acknowledged that the agent appointed to collect rents before the bankruptcy was equivalent to a state-court receivership, but held that the adjudication terminated that relationship. Because petitioner had made no request *during the bankruptcy* for a sequestration of rents or for the appointment of a receiver, petitioner had not, in the court's view, taken the kind of action North Carolina law required to give the mortgagee a security interest in the rents collected after the bankruptcy adjudication. One judge dissented, adopting the position of the District Court. *Id*, at 1211.

I

We did not grant certiorari to decide whether the Court of Appeals correctly applied North Carolina law. Our concern is with the proper interpretation of the federal statutes governing the administration of bankrupt estates. Specifically, it is our purpose to resolve a conflict between the Third and

Seventh Circuits on the one hand, and the Second, Fourth, Sixth, Eighth, and Ninth Circuits on the other, concerning the proper approach to a dispute of this kind.

The courts in the latter group regard the question whether a security interest in property extends to rents and profits derived from the property as one that should be resolved by reference to state law.[2] In a few States, sometimes referred to as "title States," the mortgagee is automatically entitled to possession of the property, and to a secured interest in the rents.[3] In most States, the mortgagee's right to rents is

---

[2] See *In re Brose,* 254 F. 664, 666 (CA2 1918) (" 'The general rule is that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken, in his behalf, by a receiver, . . . or until, in proper form, he demands and is refused possession.' This general rule the federal courts will follow, except in cases where it appears that the law of the state where the premises are situated applies a different rule") (quoting *Freedman's Savings & Trust Co. v. Shepherd,* 127 U. S. 494, 502–503); *Tower Grove Bank & Trust Co. v. Weinstein,* 119 F. 2d 120, 122 (CA8 1941) ("In this circuit the law is settled that the construction of mortgages is governed by local state law"); *In re Hotel St. James Co.,* 65 F. 2d 82 (CA9 1933); *In re American Fuel & Power Co.,* 151 F. 2d 470, 481 (CA6 1945). See also *Fidelity Bankers Life Ins. Co. v. Williams,* 506 F. 2d 1242, 1243 (CA4 1974). See generally 4A W. Collier, Bankruptcy ¶ 70.16, pp. 157–165 (14th ed. 1975); Hill, The Erie Doctrine in Bankruptcy, 66 Harv. L. Rev. 1013 (1953).

[3] In some title States, the mortgagee's right to rents and profits may be exercised even prior to default, see Me. Rev. Stat. Ann., Tit. 33, § 502 (1964); in all events, the right at least attaches upon default, see *Uvalda Naval Stores Co. v. Cullen,* 165 Ga. 115, 117, 139 S. E. 810, 811 (1927). See generally R. Kratovil, Modern Mortgage Law and Practice § 294, p. 204 (1972); Comment, The Mortgagee's Right to Rents and Profits Following a Petition in Bankruptcy, 60 Iowa L. Rev. 1388, 1390–1391 (1975).

North Carolina has been classified as a "title" State, Comment, The Mortgagee's Right to Rents After Default, 50 Yale L. J. 1424, 1425 n. 6 (1941), although it does not adhere to this theory in its purest form. Under its case law, a mortgagee is entitled to possession of the mortgaged property upon default, and need not await actual foreclosure. Such possession might be secured either with the consent of the mortgagor or by an action in ejectment. But so long as the mortgagor does remain in

dependent upon his taking actual or constructive possession of the property by means of a foreclosure, the appointment of a receiver for his benefit, or some similar legal proceeding.[4] Because the applicable law varies from State to State, the results in federal bankruptcy proceedings will also vary under the approach taken by most of the Circuits.

The Third and Seventh Circuits have adopted a federal rule of equity that affords the mortgagee a secured interest in the rents even if state law would not recognize any such interest until after foreclosure.[5] Those courts reason that since the bankruptcy court has the power to deprive the mortgagee of his state-law remedy, equity requires that the right to rents not be dependent on state-court action that may be precluded by federal law.[6] Under this approach, no affirmative steps

---

possession, even after default, he—not the mortgagee—appears to be entitled to the rents and profits. See *Brannock* v. *Fletcher,* 271 N. C. 65, 155 S. E. 2d 532 (1967); *Gregg* v. *Williamson,* 246 N. C. 356, 98 S. E. 2d 481 (1957); *Kistler* v. *Development Co.,* 205 N. C. 755, 757, 172 S. E. 413, 414 (1934) ("In the absence of a stipulation to the contrary a mortgagor of real property who is permitted to retain possession is entitled to the rents and profits. *Credle* v. *Ayers,* 126 N. C., 11. As between the mortgagor and the mortgagee equity makes the mortgage a charge upon the rents and profits when the mortgagor is insolvent and the security is inadequate . . . but the prevailing rule is that a mortgagee is not entitled to rents until entry is made or a suit for foreclosure is begun").

[4] See *Tower Grove Bank & Trust Co.* v. *Weinstein, supra; Central States Life Ins. Co.* v. *Carlson,* 98 F. 2d 102 (CA10 1938); 4A Collier, *supra* n. 2, at 157–158.

[5] See *Bindseil* v. *Liberty Trust Co.,* 248 F. 112 (CA3 1917); *In re Pittsburgh-Duquesne Development Co.,* 482 F. 2d 243 (CA3 1973); *In re Wakey,* 50 F. 2d 869 (CA7 1931).

[6] See, *e. g., Central Hanover Bank & Trust Co.* v. *Philadelphia & Reading Coal & Iron Co.,* 99 F. 2d 642, 645 (CA3 1938):

"It is settled in this circuit that in a bankruptcy proceeding a mortgage creditor is entitled without prior demand to the net income of the mortgaged property from the date of adjudication if it is needed to pay the amount due him. . . . This is because the bankruptcy proceeding has taken from the Debtor the possession of his property and in so doing has

are required by the mortgagee—in state or federal court—to acquire or maintain a right to the rents.

## II

We agree with the majority view.

The constitutional authority of Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States" [7] would clearly encompass a federal statute defining the mortgagee's interest in the rents and profits earned by property in a bankrupt estate. But Congress has not chosen to exercise its power to fashion any such rule. The Bankruptcy Act does include provisions invalidating certain security interests as fraudulent, or as improper preferences over general creditors.[8] Apart from these provisions, however, Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.[9]

---

deprived the mortgage creditor of his ordinary remedy to reach the property mortgaged and its income. It, therefore, follows upon equitable principles, as Judge Woolley pointed out in Bindseil v. Liberty Trust Co., supra, . . . 'that after insolvency has taken the debtor's property out of his hands, its income or product belongs to the lien creditor, who has thus become its virtual owner; and that such income or product issuing from mortgaged property, should not be diverted from the mortgage creditor who has a lien to general creditors who have no lien.' "

[7] U. S. Const., Art. I, § 8, cl. 4.

[8] See 11 U. S. C. §§ 96 (a) and (b) (authorizing trustee to void as preferences certain transfers made by the bankrupt within four months of bankruptcy); §§ 107 (a) and (d) (invalidating certain liens obtained through judicial proceedings within four months of bankruptcy and certain fraudulent transfers made within one year of bankruptcy); § 110 (c) (authorizing trustee to strike down secret liens and transfers); § 110 (e) (invalidating any transfer deemed fraudulent under federal or state law). See generally 3 Collier, supra n. 2, ¶ 60.01, pp. 743-746.

[9] "The Federal Constitution, Article I, § 8, gives Congress the power to establish uniform laws on the subject of bankruptcy throughout the United States. In view of this grant of authority to the Congress it has been settled from an early date that state laws to the extent that they conflict with the laws of Congress, enacted under its constitutional author-

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis* v. *Manufacturers National Bank,* 364 U. S. 603, 609. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.[10]

The minority of courts which have rejected state law have not done so because of any congressional command, or because their approach serves any identifiable federal interest. Rather, they have adopted a uniform federal approach to the question of the mortgagee's interest in rents and profits because of their perception of the demands of equity. The equity powers of the bankruptcy court play an important part in the

---

ity, on the subject of bankruptcies are suspended. While this is true, state laws are thus suspended only to the extent of actual conflict with the system provided by the Bankruptcy Act of Congress. *Sturges* v. *Crowninshield,* 4 Wheat. 122; *Ogden* v. *Saunders,* 12 Wheat. 213.

"Notwithstanding this requirement as to uniformity the bankruptcy acts of Congress may recognize the laws of the State in certain particulars, although such recognition may lead to different results in different States. For example, the Bankruptcy Act recognizes and enforces the laws of the States affecting dower, exemptions, the validity of mortgages, priorities of payment and the like. Such recognition in the application of state laws does not affect the constitutionality of the Bankruptcy Act, although in these particulars the operation of the act is not alike in all the States." *Stellwagen* v. *Clum,* 245 U. S. 605, 613.

[10] Conversely, the federal statutory basis for voiding fraudulent and preferential transfers in order to protect general creditors applies to both security interests and other interests in property.

56

administration of bankrupt estates in countless situations in which the judge is required to deal with particular, individualized problems. But undefined considerations of equity provide no basis for adoption of a uniform federal rule affording mortgagees an automatic interest in the rents as soon as the mortgagor is declared bankrupt.

In support of their rule, the Third and Seventh Circuits have emphasized that while the mortgagee may pursue various state-law remedies prior to bankruptcy, the adjudication leaves the mortgagee "only such remedies as may be found in a court of bankruptcy in the equitable administration of the bankrupt's assets." *Bindseil* v. *Liberty Trust Co.,* 248 F. 112, 114 (CA3 1917).[11] It does not follow, however, that "equitable administration" requires that all mortgagees be afforded an automatic security interest in rents and profits when state law would deny such an automatic benefit and require the mortgagee to take some affirmative action before his rights are recognized. What does follow is that the federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued. This is the majority view, which we adopt today.

The rule of the Third and Seventh Circuits, at least in some circumstances, affords the mortgagee rights that are not his as a matter of state law. The rule we adopt avoids this inequity because it looks to state law to define the security interest of the mortgagee. At the same time, our decision avoids the opposite inequity of depriving a mortgagee of his state-law security interest when bankruptcy intervenes. For while it is argued that bankruptcy may impair or delay the mortgagee's exercise of his right to foreclosure, and thus his acquisition of a security interest in rents according to the law

---

[11] See also *Central Hanover Bank & Trust Co.* v. *Philadelphia & Reading Coal & Iron Co., supra; In re Wakey, supra.*

of many States, a bankruptcy judge familiar with local practice should be able to avoid this potential loss by sequestering rents or authorizing immediate state-law foreclosures. Even though a federal judge may temporarily delay entry of such an order, the loss of rents to the mortgagee normally should be no greater than if he had been proceeding in a state court: for if there is a reason that persuades a federal judge to delay, presumably the same reason would also persuade a state judge to withhold foreclosure temporarily. The essential point is that in a properly administered scheme in which the basic federal rule is that state law governs, the primary reason why any holder of a mortgage may fail to collect rent immediately after default must stem from state law.

## III

Recognizing that the bankruptcy frustrated petitioner's right to take possession of the mortgaged property and thereby to establish his right to rents as a matter of North Carolina law, the Court of Appeals assumed that a request to the bankruptcy judge for sequestration of rents, for the appointment of a receiver, or for permission to proceed with a state-court foreclosure would have satisfied the state-law requirement. Since none of these steps was taken during the bankruptcy, the Court of Appeals held that petitioner had no right to the rents.

The dissenting judge in the Court of Appeals, as well as the District Judge, felt that the action taken during the arrangement proceedings, coupled with informal requests for abandonment of the property during the bankruptcy, was sufficient to comply with North Carolina law. Neither of these judges, however, based his analysis on the federal rule followed in the Third and Seventh Circuits. They merely disagreed with the majority about the requirements of North Carolina law.

In this Court the parties have argued the state-law question at great length, each stressing different aspects of the

record. We decline to review the state-law question. The federal judges who deal regularly with questions of state law in their respective districts and circuits are in a better position than we to determine how local courts would dispose of comparable issues.[12]

The judgment is affirmed.

*It is so ordered.*

---

[12] See *The Tungus* v. *Skovgaard,* 358 U. S. 588, 596; *United New York & New Jersey Pilots Assn.* v. *Halecki,* 358 U. S. 613, 615. See also *Bishop* v. *Wood,* 426 U. S. 341, 345–346.