**In re Bernard ANDERSON and Carol Anderson, Debtors.**

Bankruptcy No. 83–2029.
Civ. Nos. 84–0–592, 84–0–682.

United States District Court,
D. Nebraska.

June 6, 1985.

Michael W. Heavey, Omaha, Neb., for debtors.

Mattson, Ricketts, Davies, Stewart, Calkins & Duxbury, Randall V. Petersen, Lincoln, Neb., for Lincoln Production Credit Ass'n, creditor/appellant.

Jim R. Titus, Lincoln, Neb., for Federal Land Bank, creditor.

BEAM, District Judge.

These matters are on appeal by Lincoln Production Credit Association (LPCA) from an order entered by the United States Bankruptcy Court for the District of Nebraska denying LPCA's objection to the use of cash collateral and motion to segregate and account for rents from property subject to a security interest, and from an order denying LPCA's motion for stay. Bernard and Carol Anderson are the debtors in these proceedings. After a review of all materials submitted, this Court finds that the order in CV 84-0-592 of the Bankruptcy Court denying LPCA's objection to the use of cash collateral and motion to segregate must be reversed and this matter remanded for further proceedings consistent with this opinion. The order in CV 84-0-682 denying the stay is affirmed.

## I.

The facts in this case are not in dispute. The appellant, LPCA, is the beneficiary of a deed of trust, with the debtors as trustors. The deed of trust was given for valid consideration more than ninety days before the bankruptcy petition was filed. The deed of trust was recorded in the office of the Register of Deeds of Fillmore County, Nebraska.

LPCA notified the debtors of acceleration of the debts secured by the deed of trust the day before the bankruptcy petition was filed. On the same day bankruptcy was filed, LPCA, without notice of the bankruptcy filed a notice of default with the Fillmore County Register of Deeds.

The deed of trust contains an assignment of rents clause which provides as follows:

9. Assignment of Rents.

9.1 Trustor assigns all rents, revenues and profits of the security to the Beneficiary, and shall as agent of Beneficiary, collect and apply the proceeds to the

obligation secured hereby. Upon default, Beneficiary may terminate such agency and may without notice and without regard to the adequacy of the security proceed to collect rents, revenues and profits, including those past due and unpaid and apply the proceeds less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby. Beneficiary may do anything reasonable and necessary to give effect to this Assignment of Rents upon the default of the Trustor. Unless the Trustor and Beneficiary agree otherwise in writing, any application of rents, issues or profits to any indebtedness secured hereby shall not extend or postpone the due date of the installment payments as provided in the promissory note or change the amount of such installments. The entering upon and taking possession of the property, the collection of such rents, issues and profits of the application thereof as aforesaid shall not waive or cure any default or notice of default hereunder or invalidate any act done pursuant to such notice. Trustor also assigns to the Beneficiary, as further security for the performance of the obligation secured hereby, all prepaid rents and all monies which may have been or may hereafter be deposited with said Trustor by any lessee of the property, to secure the payment of any rent or damages, and upon default in the performance of any of the provisions hereof, Trustor agrees to deliver such rents and deposits to the Beneficiary. Delivery of written notice of the Beneficiary's exercise of the rights granted here to any tenant occupying the premises shall be sufficient to require the tenant to pay rent to the Beneficiary until further notice. Beneficiary shall be accountable only for the rents, revenues and profits collected and not the rental value of the premises. No construction of this paragraph shall alter the occupier liability and responsibility of the Trustor, who, unless Beneficiary or Trustee is in actual possession of the premises, shall be responsible therefor,, and Trustor shall hold Beneficiary and Trustee harmless from all claims of personal injury or property damage arising from or on account of the premises.

9.2 Rents, revenues and profits shall include but not be limited to crops or proceeds, growing on or to be grown on the premises; payments, contract rights or proceeds, the entitlement to which is derived from the premises; and, livestock or proceeds therefrom, pastured on, raised on or enhanced in value because of the premises.

(Record on Appeal, [hereinafter ROA], filing 70, Exhibit A at 4–5).

After filing bankruptcy, the debtors as debtors in possession leased the real estate subject to the deed of trust to another for twelve thousand dollars. Subsequently, LPCA moved for relief in the Bankruptcy Court as set forth in the objection to the use of cash collateral and motion to segregate. (ROA, filing 70, Exhibit A).

LPCA contends as provided for in the deed of trust, LPCA's interest in the rental proceeds received by the debtors is sufficient to classify such proceeds as cash collateral requiring adequate protection. The debtors argue that under Nebraska law, LPCA did not have a lien interest with respect to such rent to the extent necessary to justify the relief sought.

The Bankruptcy Court held that the LPCA has no enforceable interest in the rent proceeds because for the lien to be enforceable the law of Nebraska would require a receiver to be appointed to collect the rents before the bankruptcy petition was filed. This Court believes that the rule of law as stated by the Bankruptcy Court is incorrect. To conclude that a creditor has an enforceable lien on the rent proceeds only if the creditor takes certain steps pre-petition ignores the great weight of authority that holds corresponding action in bankruptcy court can be taken to activate a trustors' assignment of rents clause.

II.

The Bankruptcy Code defines "cash collateral" as "cash, negotiable instruments,

documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate has an interest." 11 U.S.C. § 363. The legislative history of section 363 makes it clear that rents can be considered cash collateral. "Rents received from real property before or after commencement of the case would be cash collateral to the extent they are subject to a lien." S.Rep. No. 95–989, 95th Cong., 2nd Sess. 55 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5841. Recently, section 363 was amended to specifically include the term rents: "The proceeds, products, offsprings, *rents*, or profits of property subject to a security interest as provided in § 552(b) of this title whether existing before or after the commencement of a case under this title." [Emphasis added]. 11 U.S.C. § 363 (effective for cases filed after October 9, 1984).

In addition, section 552(b) of the Bankruptcy Code provides that under certain conditions rents acquired by the bankruptcy estate post-petition are to be included within the security interest created by a pre-petition security agreement:

> (b) Except as provided in sections 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a secured party entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b) (1978).

The Supreme Court in *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59

L.Ed.2d 136 (1979) clearly established that the rights to rents and profits realized by mortgaged property is to be determined by the laws of the state in which the property is located rather than by a federal law.

> ... [O]ur decision avoids the ... inequity of depriving a mortgagee of his state-law security interest when bankruptcy intervenes. For while it is argued that bankruptcy may impair or delay the mortgagee's exercise of his right to foreclosure, and thus his acquisition of a security interest in rents according to the law of many States, a bankruptcy judge familiar with local practice should be able to avoid this potential loss by sequestering rents or authorizing immediate state-law foreclosures. Even though a federal judge may temporarily delay entry of such an order, the loss of rents to the mortgagee normally should be no greater than if he had been proceeding in a state court: for if there is a reason that persuades a federal judge to delay, presumably the same reason would also persuade a state judge to withhold foreclosure temporarily. The essential point is that in a properly administered scheme in which the basic federal rule is that state law governs, the primary reason why any holder of a mortgage may fail to collect rent immediately after default must stem from state law. The federal bankruptcy court should take whatever steps are necessary to ensure the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy has ensued.

*Id.* at 56–57, 99 S.Ct. at 918–19. Therefore, the laws of the State of Nebraska are to be applied when determining the rights to rents on mortgaged property.

■ This Court finds that the assignment of rents clause contained in the deed of trust at issue in this case is conditioned upon default. In the State of Nebraska, such clauses are valid and enforceable. *See Central Savings Bank v. First Cadco*

*Corp.,* 186 Neb. 112, 181 N.W.2d 261 (1970); *Pennsylvania Mutual Life Ins. Co. v. Katz,* 139 Neb. 501, 297 N.W. 899 (1942). The deed of trust provides, "Upon default, the Beneficiary may terminate the agency and may without notice and without regard to the adequacy of the security proceed to collect rents ..." (ROA, filing 70, Exhibit A at 4–5). The contractual provision states further that the, "Beneficiary may do anything reasonable and necessary to give effect to this Assignment of Rents upon the default of the Trustor." *Id.* In addition, it provides "upon default in the performance of any of the provisions hereof, Trustor agrees to deliver such rents and deposits to the Beneficiary." *Id.* The parties conduct from the date of the execution of the deed of trust until the date of default, was such that the "rents, revenues and profits" were to be used by the debtor.

 In *Federal Mortgage Corp. v. Ganser,* 146 Neb. 635, 20 N.W.2d 689 (1945), the Nebraska Supreme Court, stated:

> [O]n a condition broken by which the mortgagee is authorized to commence foreclosure proceedings, if the property be inadequate security [the mortgagee] has thence forward an equitable lien upon the rents and profits, or so much thereof as may be necessary to the security of the mortgage debt which he may enforce by proper proceedings.

*Federal Mortgage Corp.,* 20 N.W.2d at 691. An equitable lien in storage payments and proceeds from the sale of PIK corn was recently recognized and enforced in *First National Bank of Atkinson v. Olson, et al.,* Case No. 18061 (Dist.Ct. of Holt County, Nebraska, August 23, 1984) (J. Garden). The lien is dependent upon the real property described in the mortgage not being adequate to satisfy the mortgage debt. In Nebraska, the proper procedures to enforce such a lien outside the context of bankruptcy includes the commencement of foreclosure proceedings and requesting the appointment of a receiver to collect the rents and profits. *Prudential Insurance Co. v. Farm Inv. Co.,* 123 Neb. 578, 243 N.W. 842 (1932); *Huston v. Canfield,* 57 Neb. 345, 77 N.W. 763 (1899). The mortgagee must be able to show that the real estate is of a value which is insufficient to discharge the mortgage debt in order to have a receiver appointed. *See Prudential Ins. Co.,* 243 N.W. at 846. *See also Neb.Rev.Stat.* § 25–1081 (Reissue 1979).

 While the above-mentioned procedure is proper outside the bankruptcy context, it is next to impossible to follow explicitly when bankruptcy intervenes to thwart that procedure.[1] The Court must look at the substantive rights that give rise to the enforceable lien under state law and provide a procedure within the bankruptcy context that protects those rights.[2] Under

---

1. The Eighth Circuit has twice reviewed the validity of an assignment of rents clause under Missouri law in the context of a bankruptcy case. *Mortgage Loan Co. v. Livingston,* 45 F.2d 28 (8th Cir.1930) (trustee takes over debtors' property subject to valid liens. Lien was valid, therefore, appropriate for mortgagee to notify trustee of interest in rents and request segregation.

> To hold that the mortgagees had a legal right to these rents ... but that they should be precluded from recovering same because they had not technically pursued a legal remedy is to overlook the fact that the property was in the control of a court of equity, and that equitable remedies commensurate with the legal rights of the parties should be available. To take from the mortgagees the property to which confessedly they are entitled under the pledge provision of their mortgage, and trans-

> fer it to the unsecured creditors appeals to us as harsh, unequitable, and unwarranted.

*Id.* at 34). *Tower Grove Bank & Trust Co. v. Weinstein,* 119 F.2d 120 (8th Cir.1941) (under Missouri law, a second mortgagee was not entitled to rents collected in bankruptcy because mortgagee contained no provision pledging the rents and profits and because mortgagee took no steps to impress a lien upon the rents by requesting the appointment of a receiver, application to the bankruptcy court, or demand upon the trustee, until after the rents had been collected and the premises sold. *Id.* at 123).

2. Prior to *Butner, Collier* noted that:
> Once bankruptcy has begun, the mortgagee may if he has done nothing up to that time, take the following steps to secure the rents and profits: (1) Obtain from the Bankruptcy Court the appointment of a receiver to collect the rents for the benefit of the mortgagee, (2)

Nebraska law, after a default, the creditor can establish a right to have a receiver appointed to collect the rents by showing that the value of the property is inadequate to secure the debt. Accordingly, if a trustee or mortgagee is able to establish the property is inadequate to secure the debt, then the Bankruptcy Court should devise a procedure to likewise protect the creditor's interest in the rents forwarded from that point in time. Since bankruptcy stays any foreclosure proceedings or efforts to sell the property under the deed of trust provisions, separation of the rents and their treatment as cash collateral would ensure the creditor protection similar to the protection he would have under state law had no bankruptcy ensued. The Bankruptcy Court would be exercising its equitable powers to protect substantive rights which do exist under state law. *See Johnson v. First Nat'l. Bank of Montevideo*, 719 F.2d 270, 274 (8th Cir.1983) ("[A]bsent a specific grant of authority from Congress or exceptional circumstances, the Bankruptcy Court may not exercise equitable powers to create substantive rights which do not exist under state law." *Id.* at 274).

■ The holding of this Court is in accord with *Wolters Village, Ltd. v. Village Properties, Ltd.*, 723 F.2d 441 (5th Cir. 1984). In that case, the Court found that interest in rents were not perfected because the creditor *had failed* to take *any action at all* required under state law before or after the filing of the bankruptcy petition. In the case at bar, LPCA objected to the use of cash collateral and moved to segregate the rents. LPCA did not, however, make the necessary showing to the Bankruptcy Court that the value of the property was inadequate to secure the debt. Such a showing is necessary to justi-

fy the relief sought. LPCA should have an opportunity to make a showing that such condition existed at the time the Bankruptcy Court considered this matter.

### III.

■ LCPA has also appealed from the order of the Bankruptcy Court denying a stay pending appeal. Pursuant to *Bankr. Rule* 8005 the Bankruptcy Court is empowered to enter any "appropriate order during the pendency of the appeal on such terms as will protect the·rights of all parties in interest."

The standards governing discretionary stays pending appeal are:

(1) the likelihood of success on the merits of the appeal;

(2) the injury suffered by the appellant in denying a stay;

(3) the injury to the appellee by granting the stay; and

(4) the harm to the public interest.

*In re Howley*, 38 B.R. 314, 315 (Bkrtcy.D. Minn.1984).

After reviewing the facts in this case in conjunction with the standards for granting a stay, this Court does not believe the Bankruptcy Court was clearly erroneous in denying the stay. There is no evidence in the record that the LPCA was undersecured, or that the value of the security was declining rapidly. There was not sufficient evidence of irreparable harm. Furthermore, the chance of success on the merits was questionable in view of the paucity of Nebraska law on the subject. Therefore, the order of the Bankruptcy Court in CV 84-0-682 is affirmed.

Accordingly,

IT IS ORDERED that the Bankruptcy Court's order denying the objection to the

---

petition the Bankruptcy Court for an order of sequestration, or (3) secure the Bankruptcy Court's consent to institute foreclosure proceedings.
4A Collier on Bankruptcy, ¶ 70.16, at 161–162 (14th ed. 1978).

*See generally,* Comment, *The Mortgagee's Right to Rents and Profits Following a Petition in Bankruptcy,* 60 Iowa L.Rev. 1388 (1975).

use of cash collateral and motion for segregation in CV 84–0–592 is reversed and remanded for further proceedings consistent with this order.

IT IS FURTHER ORDERED that the appeal in CV 84–0–682 from the order denying the motion for stay should be and hereby is affirmed.