**In the Matter of Robert and Linda SELDEN, Debtors.**

**Bankruptcy No. BK84–2414.**

United States Bankruptcy Court, D. Nebraska.

July 17, 1986.

Steven Wolf and Terry M. Anderson of Westergren, Hauptman, O'Brien, Wolf & Hadley, P.C., Omaha, Neb., for debtors.

Terrence L. Michael of Baird, Holm, McEachen, Pederson, Hamann & Strasheim, Omaha, Neb., for Federal Land Bank of Omaha.

MEMORANDUM OPINION RE MOTION FOR SEQUESTRATION OF RENTS AND PROFITS BY FEDERAL LAND BANK OF OMAHA

TIMOTHY J. MAHONEY, Bankruptcy Judge.

This motion for sequestration of rents and profits by Federal Land Bank of Omaha (Bank) was submitted on an agreed statement of facts, oral argument and written briefs, the last of which was received by the Court on April 23, 1986. Appearing on behalf of the debtors were Steven Wolf and Terry M. Anderson of Westergren, Hauptman, O'Brien, Wolf & Hadley, P.C., Omaha, Nebraska. Appearing on behalf of the Federal Land Bank of Omaha was Terrence L. Michael of Baird, Holm, McEachen, Pederson, Hamann & Strasheim of Omaha, Nebraska.

### Findings of Fact

Debtors filed their petition under Chapter 11 of the Bankruptcy Code on December 10, 1984. Debtors have continued in possession of their property as debtors-in-possession as defined under the Bankruptcy Code.

The Federal Land Bank of Omaha, hereinafter referred to as Bank, is the holder of a claim in the principal amount of $271,530 with accrued interest as of the date of filing of $26,143.33. Such claim is secured by a real estate mortgage on 275 acres of land located in Howard County, Nebraska,

and a possessory lien on certain Federal Land Bank stock.

The Court has previously found and the parties have stipulated that the value of the Bank's collateral is less than the amount which the Bank is owed.

The mortgage document states that the debtors mortgaged and conveyed the real estate described and the rents, issues, crops and profits arising from the land. In addition, ¶ (8) states:

"(8) That in the event action is brought to foreclose this mortgage, the Mortgagee shall be entitled to immediate possession of the mortgaged premises, and the Court may appoint a receiver to take possession of the premises, with the usual powers of receivers in like cases."

On the date the debtors filed their bankruptcy petition they were in default on their obligations to the Bank.

On January 13, 1986, the Bank filed a motion requesting the Court to direct the debtors, as debtors-in-possession, to account for all rents and profits attributable to the real estate and for an order sequestering rents and profits for the benefit of the Bank.

Prior to the date the debtors filed their petition in bankruptcy, the Bank had not filed a mortgage foreclosure action nor had the Bank taken any action for the appointment of a receiver.

There is no evidence that debtors-in-possession have received any rents during the pendency of the bankruptcy. The Bank's request is, therefore, directed at any profits which have resulted from the use of the land, which would include harvested crops and the proceeds thereof.

### Discussion

■ The Bank takes the position that since the debtor granted the Bank a security interest in profits by virtue of the terms of the mortgage, and since the debtor was in default on the date the bankruptcy was filed, the filing of bankruptcy interfered with the Bank's rights to foreclose on the mortgage pursuant to State law and request the appointment of a receiver to take control of rents and profits, if any. Since the filing of the bankruptcy petition did interfere with that right, the Bank argues that the Bankruptcy Court should fashion a procedure by which the Bank's right to appointment of receiver and custody of the rents and profits could be enforced within the bankruptcy case. The Bank has substantial local authority for its position. *In re Anderson,* 50 B.R. 728 (D.C.Neb.1985); *In re Mahloch,* unreported opinion of the United States District Court for the District of Nebraska filed June 20, 1985, at 84–349 and 84–350.

In both the *Anderson* and *Mahloch* cases referred to above, the District Court relied upon *Butner v. the United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In those opinions the Court found that the Bankruptcy Court does have the authority to sequester rents and profits if the appropriate language is contained in the mortgage. Although the Bankruptcy Court ruled that it had no such authority unless the creditor's interest in the rents and profits had been perfected by the filing of a foreclosure petition and a request for the appointment of a receiver prior to the bankruptcy filing, the District Court disagreed. It found that separation of the rents and their treatment as cash collateral would ensure the creditor protection similar to the protection it would have under State law had no bankruptcy ensued. See *Anderson* at 733.

The problem with the argument of the Bank and with the holding in *Mahloch* and *Anderson, supra,* is that the filing of a petition in bankruptcy is treated as if it were of no significance whatsoever concerning the relationship between the creditor with an unperfected security interest in "rents and profits" and the debtor who now is a debtor-in-possession under the Bankruptcy Code and has many of the powers of a trustee.

The debtor-in-possession, in exercising the powers of a trustee, has the status of a bona-fide purchaser of real property pursuant to 11 U.S.C. § 544(a)(3) or a bona-fide

lien creditor 11 U.S.C. § 544(a)(2). Under these sections of the Code, the debtor-in-possession takes priority over unperfected security interests and can avoid equitable liens. See *In re Harbour House Operating Corp.*, 26 B.R. 324, 331 (Bkrtcy.Mass. 1982).

The creditor argues that if perfection of its lien is required, the Bankruptcy Code permits such perfection under § 546(b) which provides:

"The rights and powers of a trustee under Section 544, 545 and 549 of this title are subject to generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement".

According to *Collier on Bankruptcy*, 15th Edition (1985), ¶ 362.04, this language should be read to protect the holder of a purchase-money security interest who was given ten days to perfect under State law and having done so would defeat an intervening creditor. Neither the commentators nor any cases interpret § 546(b) to mean that long after a bankruptcy petition has been filed a creditor claiming a lien can perfect it.

This Court is bound by the holding of the *Mahloch* and *Anderson* cases, *supra.* That holding is that this Court does have the power to sequester rents and profits for the benefit of a creditor who claims a lien on such rents and profits in a mortgage or deed of trust, even if the creditor made no attempt prior to the bankruptcy filing to perfect such an interest or lien in such rents and profits. This Court does not interpret *Mahloch* and *Anderson* to require the sequestration of rents and prof-

its solely upon application for such sequestration by the creditor. Both *Mahloch* and *Anderson, supra,* permit the Bankruptcy Court to fashion a remedy which would protect the interest of the creditor in a manner similar to the rights the creditor would have under State law. *Anderson,* 50 B.R. 728 at 733.

The Bankruptcy Code itself provides the necessary procedure to protect the interest of the creditor if it believes its collateral is not adequately protected. Section 362 of the Bankruptcy Code provides a procedure by which the automatic stay that prohibits the creditor from proceeding against its collateral can be lifted. See 11 U.S.C. § 362(d). The Bankruptcy Code also provides a procedure by which the debtor or the creditor can bring before the Court the question of what is and what is not cash collateral and the question of whether or not the debtor should be permitted to use cash collateral and under what circumstances. See 11 U.S.C. § 363.

■ Since the *Mahloch* and *Anderson* cases of the United States District Court for the District of Nebraska appear to conclude that the creditor has a lien in rents and profits which can be protected by the Bankruptcy Court if such creditor simply puts the proper language in the security document, it then logically follows that the creditor is, by its motion to sequester, requesting the Court to recognize and enforce the provisions of 11 U.S.C. § 552(b). That section states:

"Except as provided in Sections 363, 506(c), 522, 544, 545, 547 and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such se-

curity agreement and by applicable non-bankruptcy law, except to any extent that the Court, after notice and hearing and based on the equities of the case, orders otherwise."

The creditor wants the Court to sequester rents and profits in the possession of the debtor, now or in the future, if those rents and profits are a result of the use of the land upon which the creditor claims a mortgage interest. This Court, because it is bound by the decisions of the District Court in *Anderson* and *Mahloch, supra,* agrees to enter an order sequestering such proceeds received by the debtor after the date the creditor filed its motion to sequester to the extent that there are any net rents and profits following the deduction of reasonable and necessary costs and expenses of generating and preserving such rents and profits. See 11 U.S.C. § 506(c). However, there is no evidence before the Court in this case of either the amount of the rents and profits received by the debtors-in-possession following the filing of the motion to sequester nor is there any evidence before the Court of the reasonable costs and expenses involved in the production and preservation of such rents and profits. The reason there is no such evidence is that this case came before the Court on motion and rather than set it for evidentiary hearing, the Court first requested briefs and legal argument concerning the legitimacy of the motion and the power of this Court to entertain such motion. Because of the District Court decisions in *Mahloch* and *Anderson,* this Court concludes that the motion is legitimate and the Court can entertain the motion and its specific request. However, the matter will have to be set for an evidentiary hearing to provide the Court with evidence concerning the amounts available and the amounts, if any, due to the secured creditor.

■ At the evidentiary hearing, which will be set only after specific request by either party, evidence should be presented which will enable the Court to make a determination of dollar amounts or bushel amounts. The Court plans to rely upon some version of the cash collateral determination formula recently determined in the Bankruptcy Court for the Eastern District of Michigan in an unpublished memorandum opinion in the case of *In re Ward F. Delbridge, Sr., and Brenda S. Delbridge,* 61 B.R. 484 (Bkrtcy.E.D.Mich.1986). In that case the Court created a mathematical formula in an attempt to determine the amount of cash collateral that the creditor should receive after deducting all expenses of production of post-petition milk. The Court stated at Page 11 of the decision:

"The lender is entitled to the same percentage of the proceeds of the post-petition milk as its capital contribution to the production of the milk bears to the total of the capital and direct operating expenses incurred in producing the milk. Because the parties are in a direct mathematical relationship, the rules should be easy to apply. Very simply, the larger is the lender's capital contribution to the venture, the larger its share of the proceeds ought to be. Conversely, if the farmer's input in the venture is great, the 'equities of the case' compel that his share of the proceeds likewise be great."

Although this Court will not necessarily follow the proposed formula absolutely, the Court will look very closely at it and how the application of the formula affects both the rights of the creditor and the rights of the debtor in this particular case. The mathematical equation is intended to yield an equitable division of the products of the "joint venture" between the debtor and the creditor. The formula is as follows:

$$CC = \frac{D}{(D+E+L)} \times P \text{ where:}$$

CC = "cash collateral", i.e.: the amount of the rents and profits which is encumbered by the lender's lien;

D = the average depreciation of the capital, i.e.: the land;

E = the farmer's average direct expenses such as for seed, herbicide, insecticide, input and harvesting labor, storage, marketing, etc.;

L = the average market value of the farmer's or his employees' labor; and

P = the average dollar proceeds of the grain sold or the average bushels on hand times the current dollar value of such bushels.

The whole point is this: if the lender desires net rents and profits to be sequestered for its benefit, it must somehow show to the Court what such net rents and profits really are. This will require cooperation between the lender and the debtor in possession and will require estimates by both of actual costs and actual results. Such information should be available through the monthly operating reports of the debtor-in-possession and reference to current farm commodity prices. Some estimates will be required concerning the value of labor.

A copy of the *Delbridge* case will be provided to counsel by separate mailing and is not a part of this opinion.

If the parties get the idea that it will not be easy to prove this case, they should also get the idea that this Court does not believe that it should be required to hold such a hearing. This Court believes that the Bankruptcy Code in § 362 and § 544 define the rights of the secured creditor and cut off those rights if the security interest is not perfected prepetition. However, appellate level decisions of this district indicate that the Bankruptcy Court's opinion of the law is incorrect, at least for the time being, and, therefore, this Court will hold an evidentiary hearing concerning the matter. As mentioned above, no such hearing will be held until specifically requested by either party. Practically speaking, it appears to this Court that no such hearing should be held until the 1986 harvest is completed. However, such an opinion is not binding upon the parties.

This memorandum opinion is adopted as the Court's findings of fact and conclusions of law pursuant to Bankruptcy rule 7052 and FRCP Rule 52. Separate journal entry to follow.