### In the Matter of Richard and Eunice MAHLOCH, Debtors.

### In the Matter of Dennis MAHLOCH, Debtor.

No. CV. 86–0–219.
Bankruptcy Nos. 82–2072, 82–2073.

United States District Court,
D. Nebraska.

Oct. 17, 1986.

Jerrold Strasheim, Timothy Haight, Baird, Holm, Omaha, NE, for plaintiff.

Gregory Searson, Kutak Rock, Omaha, NE, for First Nat. Bank of Chicago, Ill.

Joseph Badami, Lincoln, NE, for defendants.

## MEMORANDUM AND ORDER

STROM, Chief Judge.

This matter is presently before the Court for the second time on appeal. The initial appeal was from findings and orders made by the United States Bankruptcy Court for the District of Nebraska entered on May 25, 1984. This Court subsequently reversed the Bankruptcy Court's orders and remanded the proceedings. *In re Mahloch*, et al., CV. 84–0–349 and CV. 84–0–350, slip op. (D.Neb. June 19, 1985). The present appeal is from the bankruptcy court's decision on remand, again denying Saline State Bank's (hereinafter Bank) applications to sequester rents and profits.

The facts, as found by this Court in its June 20 order, are these.

On November 30, 1982, debtors filed their petitions under Chapter 11 of the United States Bankruptcy Code. Bank subsequently filed its proofs of claims in excess of one million dollars in each of the estates herein, such claims secured by real estate mortgages, security interests in crops, and assignment of land contracts and a portion of debtor's claims in two other bankruptcy estates. The mortgages and land contracts contain a provision for assignment of rents and profits to the Bank upon default by the mortgagee. Such provision states:

Provided further, that upon such default the Mortgagee, or a receiver appointed by the court, may at his option and without regard to the adequacy of the security, enter upon and take possession of the Property and collect the rents, issues and profits therefrom and apply them first to the cost of collection and operation of the Property and then upon the indebtedness secured by the Mortgage; said rents, issues and profits being hereby assigned to the Mortgagee as further security for the payment of the indebtedness secured hereby.

It is undisputed that debtors were in default on the applicable promissory notes and loan agreements when they filed their bankruptcy petitions. Nevertheless, as debtors in possession, they continued to operate their farming business in 1983, obtaining rental income and Payment-in-Kind (PIK) program benefits from the encumbered property. On September 28, 1983, Bank filed its applications to sequester rents and profits, seeking to protect its

asserted interest in rent, crop proceeds and PIK benefits.

*Id.* at 1–2.

On remand, Bankruptcy Judge Timothy J. Mahoney found this Court erred in its conclusion that the debtors were in default on the applicable promissory note and loan agreements when they filed the bankruptcy petitions. He specifically held "On November 30, 1982, the day the debtors filed their bankruptcy petitions, they were not in default under any term of the mortgages or contracts." *In re Mahloch, et al.,* 62 B.R. 744, 745 (Bankr.Neb.1986). Both the Bank and First National Bank of Chicago (hereinafter FNB), an unsecured creditor who opposed the applications, concur with this finding.

The parties also agree with the following findings of fact made by the Bankruptcy Court. The Bank had not commenced foreclosure proceedings, nor had it secured the appointment of a receiver to take possession of rents and profits from the subject real estate prior to the filing of the debtors' bankruptcy petitions. Additionally, the debtors were current on all taxes against the real estate at the time the petitions were filed. Throughout 1983, the Mahlochs operated their farm business as debtors in possession. They accumulated $243,472.88 in "rents and profits" which was generated by the debtors' use of the pledged land. During that same period, the Mahlochs failed to pay property taxes on a timely basis. Their failure appears to be in breach of a provision included in both the mortgages and contracts requiring that all property taxes be paid when due. Some of the delinquent property taxes remained unpaid at the time the Bank's application for sequestration was filed.

The sole issue addressed by the Bankruptcy Court below was: May a mortgagee perfect its interest in rents and profits postpetition if the debtor was not in default prepetition? *Id.* at p. 747. Upon review of the applicable law, the Court concluded that the Bank could not rely on post-petition defaults to perfect an interest or a lien in rents and profits. Thus, the Bankruptcy Court denied the Bank's application for a sequestration of the rents and profits. On appeal, the Bank contends the Bankruptcy Court erred as a matter of law in its finding.

■ Before this Court addresses the merits of the appeal, it is prudent to state the general standard of review that guides the Court in matters such as this. On appeal, a district court is not bound by the Bankruptcy Judge's conclusions of law; however, the Bankruptcy Judge's findings of fact are entitled to stand unless clearly erroneous. *In re American Beef Packers, Inc.,* 457 F.Supp. 313, 314 (D.Neb.1978); see also Bankruptcy Rule of Procedure 8013.

The United States Supreme Court recently addressed a problem quite similar to that which presently faces the Court. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The Supreme Court found a mortgagee's right to rents and profits collected during its mortgagor's bankruptcy is governed by the law of the state where the property is located, rather than by a "federal rule of equity." In reaching this decision, the Court reasoned:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

*Id.* at 55, 99 S.Ct. at 918. Accordingly, state law governs the Bank's rights to the rents and profits. The parties agree that Nebraska's law is applicable.

■ Under Nebraska law, the mortgagor of real estate retains legal title and the right of possession thereof. Neb.Rev.Stat. § 76–276 (Reissue 1981). This relationship between the mortgagor and mortgagee, however, may be modified through stipulation to the contrary. Absent such stipulation, the mortgagor is vested with the right to collect all rents and profits inuring from the real property until he is dispossessed. *Huston v. Canfield,* 57 Neb. 345, 77 N.W. 763 (1899). Again, the mortgagor's right to rents and profits may be modified by stipulation or agreement to the contrary. *Id.; Central Savings Bank v. First Cadco Corp.,* 186 Neb. 112, 181 N.W.2d 261 (1970); *Penn Mutual*

*Life Ins. Co. v. Katz,* 139 Neb. 501, 297 N.W. 899 (1941). The Mahlochs and the Bank, in executing the mortgages at issue, agreed to such a modification. They agreed that upon default, the Bank or a receiver appointed by the court, may take possession of the property and collect rents and profits therefrom. Under an agreement granting a mortgagee the right to collect rents and profits upon default, Nebraska law recognizes an "equitable lien" theory:

> [O]n a condition broken, by which the mortgagee is authorized to commence foreclosure proceedings, if the property be inadequate security, he has thenceforward an equitable lien upon the rents and profits, or so much thereof as may be necessary to the security of the mortgage debt, which he may enforce by proper proceedings.

*Federal Farm Mortgage Corp. v. Ganser,* 146 Neb. 635, 639, 20 N.W.2d 689, 691 (1945). As stated in *In re Anderson:*

> The lien is dependent upon the real property described in the mortgage not being adequate to satisfy the mortgage debt. In Nebraska, the proper procedures to enforce such a lien outside the context of bankruptcy includes commencement of foreclosure proceedings and requesting the appointment of a receiver to collect the rents and profits. (Citations omitted).

50 B.R. 728, 732 (D.Neb.1985).

Like all other creditors, the Banks' rights under state law are also governed by Title 11 to the United States Code once its debtor files a bankruptcy petition. This proposition was made quite evident in *Butner* where the Supreme Court affirmed the lower court's decision which allowed a bankrupt's estate to retain post-petition rents and profits. See *Golden Enterprises, Inc. v. United States,* 566 F.2d 1207 (4th Cir.1977). In *Golden Enterprises,* the Fourth Circuit Court of Appeals ruled the bankrupt's estate held an interest superior to that of a second mortgagee. The Court's decision was based upon an application of state law and the federal bankruptcy law which was in place at that time.

The bankruptcy law which governs this suit is found at §§ 552(b), 362(a)(4) and (5)

and 544 of the Bankruptcy Code (11 U.S.C. § 101, et seq.). Section 552(b) provides that, under certain conditions, rents and profits acquired post-petition are to be included within the security interest created by a pre-petition security agreement:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547 and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Through this section, the Congress is attempting to avoid the inequity of depriving a mortgagee of his state law security interest when bankruptcy intervenes, a problem which was addressed by the Supreme Court when it rendered its decision in *Butner. Butner v. United States,* 440 U.S. at 56–57, 99 S.Ct. at 918–19.

Section 552(b), however, is expressly limited to security interests created "before the commencement of the case." This limitation is reasonable in light of the automatic stay imposed pursuant to Section 362 which, upon the filing of a bankruptcy petition, operates as a stay of:

> Any act to create, perfect or enforce any lien against the property of the estate. Section 362(a)(4);
>
> and
>
> Any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title. Section 362(a)(5).

As stated by Judge Mahoney at page 6 of his memorandum opinion, "[t]he drafters of

the Code were aware that the broad language of Section 362 would stop the perfection of certain liens, including security interests, statutory liens and judicial liens as well as inchoate charges against property," citing Collier on Bankruptcy, 15th Ed., Par. 362.04. To provide creditors with the same protection, the creditor might expect under state law with regard to perfection of liens, the drafters provided the creditor with the benefit of Section 546(b) which allows post-petition perfection under certain circumstances. Perfection under section 546, however, has not occurred in this case.

Section 552(b) is also expressly made subject to Section 544 of the Code. Under Section 544, the Mahlochs, as debtors in possession, were vested with a judicial lien at the commencement of the case on all estate property subject to a judicial or judgment lien. In Nebraska a lien of judgment attaches to all lands and tenements of the debtor within the county where the judgment is entered. Neb.Rev.Stat. § 25–1504 (Reissue 1985). Under Section 544, the debtors in possession, as judgment creditors, are assumed to have had judgment entered in all counties wherein the debtor owns real property. Since the debtors in possession had a judgment lien on all the Mahloch's real property and the lien was perfected through possession, they were also entitled to collect rents and profits from the land. See *Huston,* supra.

■ With these principles of state and federal bankruptcy law in mind, the court must now determine the priority of the liens on the rents and profits. If unperfected pre-petition, the Bank's security interest in rents and profits is subordinate to that of the debtors in possession on behalf of the unsecured creditors of the estate by virtue of Section 544(a). See *United States v. Landmark Park & Assoc.,* 795 F.2d 683, 684 (8th Cir.1986).

■ As noted earlier, a mortgagor is entitled to all rents and profits while he is in possession of the encumbered real property. This statutory right may be modified by agreement to the contrary, as the Mahlochs and the Bank did in the case presently before the Court. They agreed that, upon default, the Bank could take possession of the property and collect rents and profits therefrom. Under such an agreement, an equitable lien arises in favor of the Bank only after a default has occurred and it is shown that the encumbered real property is not adequate to satisfy the mortgage debt. *In re Anderson,* 50 B.R. at 732. Unless otherwise perfected, the Bank's lien against rents and profits was subordinate to that of the debtors in possession because the default occurred post-petition.

The Bank argues its lien against rents and profits was perfected when it properly filed its mortgages with the county clerks for the counties in which the property is located. Indeed, the Eighth Circuit Court of Appeals has recently held that recording of the loan documents is sufficient to perfect a federal lender's security interest at rents. *United States v. Landmark Park & Assoc.,* 795 F.2d at 687. The court's decision, however, was limited to the federal lender/private debtor relationship. It recognized that state law applies to disputes between parties in the private sector.

The Bank fails to cite, and the Court cannot find any other authority in support of its contention that it could perfect its security interest in rents and profits through recording. Under present Nebraska law, it appears that the Bank's lien in rents and profits could not be perfected and enforced until after a default occurred. Since the Mahlochs were not in default until after they filed their bankruptcy petitioners, the Bankruptcy Court correctly held the Bank's security interest in rents and profits was subordinate to that of the debtors in possession. Accordingly,

IT IS HEREBY ORDERED that the March 12, 1986, Bankruptcy Court order denying the Saline State Bank's application for rents and profits is affirmed.