**In re Kenneth L. REYNOLDS and Teresa M. Reynolds, Debtors.**

**Robert C. FURR, Trustee in Bankruptcy, Plaintiff,**

**v.**

**Kenneth L. REYNOLDS, Teresa M. Reynolds, Barry Reynolds and Diane Reynolds, Defendants.**

**Bankruptcy No. 91–33813–BKC–RAM. Adv. No. 92–0287–BKC–RAM–A.**

United States Bankruptcy Court, S.D. Florida.

Jan. 8, 1993.

Leslie S. Osborne, Boca Raton, FL, for plaintiff.

Kevin C. Gleason, Boca Raton, FL, for defendants/debtors Kenneth L. Reynolds and Teresa M. Reynolds.

## MEMORANDUM OF DECISION

CHARLES J. MARRO, Bankruptcy Judge, by Special Designation.

This Court has jurisdiction as a core proceeding under 28 U.S.C. § 157(b)(1), (2)(E)(J), 11 U.S.C. § 548 and 11 U.S.C. § 727(2), (3), (4) and (5).

This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52 as made applicable under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Plaintiff as Trustee of the estate of the Debtors seeks, pursuant to § 548 of the Bankruptcy Code to set aside a transfer of a 50% interest in certain real property at 7 Coopers Grove Road in Kingston, New Hampshire and various household goods and furniture which the Debtors, Kenneth L. Reynolds and Teresa M. Reynolds transferred to their son, allegedly with the actual intent to hinder, delay or defraud the Debtors' creditors.

The Plaintiff alleges that Defendant, Diane Reynolds, may claim some interest in the subject property by virtue of her marriage to Barry Reynolds.

An evidentiary hearing was held during which the trustee's attorney tried to impeach Kenneth L. Reynolds as a witness by the use of questions and answers from a deposition previously taken of him. On objection by the attorney for the Debtors the Court precluded the use of said deposition since it had never been submitted to the deponent for review and had not been signed by him.

Although the evidentiary hearing was held on November 24, 1992 the trustee waited until December 2, 1992 to file a Motion To Reopen the Evidence to Allow Additional Deposition Testimony and this motion was not received by the Court until December 4 which was the last day of hearings conducted by it on special assignment in Florida. The Debtors oppose this motion under an objection thereto mailed to the trustee's attorney on December 29, 1992.

The trustee relies heavily on Rule 7032(d)(4) which provides that errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, endorsed, transmitted, filed or otherwise dealt with by the officer under Rules 30 and 31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been ascertained.

The Debtors have aptly pointed out that this rule addresses *errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared*, signed, sealed, endorsed, transmitted, filed or otherwise dealt with by the officer under Rules 30 and 31 (Federal Rules of Civil Procedure). Underscoring supplied.

Rule 7032(d)(4) does not pertain to the submission of the deposition to the deponent for review and signature or to the waiver thereof after such submission by the officer.

If a party intends to use a deposition for impeachment purposes which seems to be the run of the mill in modern trial practice common sense dictates that he supervises the carrying out of the proper procedures by the officer transcribing the testimony as it relates to review by the deponent as well as the obtaining of his signature or the waiver thereof. In this case the deposition was not signed by the Debtor nor was it established that his signature was waived. The trustee knew or should have known this prior to the evidentiary hearing at which he attempted impeachment.

Overriding all of this the Court observes that any testimony by the Debtor in the deposition inconsistent with that given by him at the evidentiary hearing would add little to the proof required of the trustee in establishing a fraudulent transfer. The Debtor tried to explain that when the deposition was taken he was ill, a confused man and did not feel responsible for the accuracy of his testimony. Further, it was obvious to the Court that the Debtor had, in several financial statements submitted by him to the Arlington Trust Co., listed as an asset a 50% interest in the 7 Coopers Grove Road property when in fact he had never, according to the credible evidence, made any investment in this property.

Based on the testimony adduced at the evidentiary hearing the following findings of fact are made and conclusions reached:

## FINDINGS OF FACT

The Debtors, Kenneth L. Reynolds and Teresa M. Reynolds, filed a petition for relief under Chapter 7 of the Bankruptcy Code on December 26, 1991 with their schedules showing total assets of $212,468.00 and liabilities of $635,415.34. On the date of filing the only real estate owned by them was their residence situated at 11264 Cloverleaf Circle, Boca Raton, Florida.

During a number of years prior to their filing the Debtors did their financing through the Arlington Trust Company of Lawrence, Massachusetts and in connection therewith they did provide the bank with personal financial statements dated June 26, 1987, June 21, 1988 and March 10, 1989. On each of these they listed themselves as having a 50% ownership in property located at 7 Coopers Grove Rd. acquired in 1983 at a cost of $48,000.00 and subject to a mortgage to said bank with a monthly payment of $456.00.

In fact this property located in Kingston, New Hampshire was purchased by the Debtors' son and his then wife, Barry and Cynthia Reynolds on or about September 1, 1983 but title was taken in the names of Kenneth Reynolds, Teresa Reynolds, Barry

Reynolds and Cynthia Reynolds because the son could not qualify for financing.

With his parents as co-signers on the note and mortgage no down payment was required and the full purchase price was obtained from the bank. The Debtors did not contribute any money whatsoever for the property. Mortgage indebtedness and taxes were all paid by Barry Reynolds and, after his divorce from Cynthia, his second wife, not only helped with the mortgage payments but made substantial monetary contributions for the improvement of the property. She even used the proceeds of a $22,200.00 Certificate of Deposit she received from her former husband for this purpose.

On a number of occasions over the past 3 or 4 years Barry Reynolds requested the Debtors to transfer their record title interest in the property to him. Finally in August, 1991 after one Baxter had placed a judgment lien against the property and the Debtors had it removed by the substitution of other property of the Debtors the Coopers Grove Road premises in Kingston, New Hampshire were conveyed by the Debtors to Barry without any consideration.

Barry and his wife, Diane, continued with the mortgage payments and these, together with others previously made, are supported by copies of checks on the account of Barry K. Reynolds and Diane M. Reynolds, signed by the latter.

## CONCLUSIONS AND DISCUSSION

The Court is impressed with the testimony of Barry and Diane Reynolds. They were both frank and open concerning all of the transactions relating to the property. Barry frankly admitted his failings which impaired his credit rating and it was apparent that his second wife was instrumental in restoring his confidence. Both were credible witnesses. The Court is convinced that the property belonged to them, subject to the mortgage, ab initio and that the Debtors had a naked record title in what they considered a 50% interest.

The Court recognizes that the Debtors listed the ownership of the 50% interest on their personal financial statements which in a sense may be considered puffing in an attempt to improve their net worth for credit purposes. Such conduct should not be condoned but on the other hand it should not be considered as proof of ownership.

A fraudulent transfer under § 548 of the Bankruptcy Code presupposes the existence of a transfer *of an interest of the debtor in property.* Since the Debtors did not in fact have such an interest but only a bare record title for the convenience of the real owner, their son Barry, there could not be a fraudulent transfer. Without such an interest in property there would also be lacking as required by § 548 an intent to hinder, delay or defraud creditors.

The nature of property interest must be determined by an examination of State law. *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979); *In re STN Enterprises, Inc.,* 47 B.R. 315, 318 (Bkrtcy.D.Vt.1985). Accordingly, the law of New Hampshire would apply since the real estate is located there and all transactions relating thereto occurred in that state. *In re Janis,* 60 B.R. 349 (Bkrtcy.S.D.Fla.1986). With such an application of the law and even without the transfer of record title by the Debtors ownership of the property would be vested in Barry Reynolds and his wife by virtue of a constructive or resulting trust. *Chamberlin v. Chamberlin,* 116 N.H. 368, 359 A.2d 631 (1976) holding that a resulting trust arises where one pays the consideration for a transfer of real property and title is taken in the name of another.

The Court concludes that the trustees motion to reopen the evidence and his Complaint To Recover Fraudulent Transfer and Objecting To Discharge of Debtor should be dismissed with prejudice. A separate order to this effect is being entered.