**In re Lawrence B. BURRIS, d/b/a # 96 Cattle Company, Burris–Dolan, Burris Farms and Burris–Goldsborough, SSN 446–42–0302, Debtor.**

**Bankruptcy No. 88–71006.**

United States Bankruptcy Court, E.D. Oklahoma.

Oct. 24, 1989.

Vacated in Part Jan. 2, 1990.*

* See, Bkrtcy., 109 B.R. 1018.

A. Camp Bonds, Jr., Muskogee, Okl., for debtor.

G. Blaine Schwabe, III, Oklahoma City, Okl., for Farm Credit Bank of Wichita.

## CLARIFICATION OF ORDER ENTERED AUGUST 3, 1989

JAMES E. RYAN, Bankruptcy Judge.

On this 23rd day of October, 1989, a Motion for New Trial (to Reconsider and Partially Vacate and Correct Order of August 3, 1989) and Brief in Support thereof filed by Farm Credit Bank of Wichita (FCB) (Docket Entry No. 261) with a Response to the Motion by the Debtor (Docket Entry No. 265) and Supplemental Response by the Debtor (Docket Entry No. 267), with a Reply to the Response by FCB (Docket Entry No. 282), a Second Supplemental Response to Motion to Reconsider filed by the Debtor (Docket Entry No. 281), with a Reply to the Second Supplemental Response by FCB (Docket Entry No. 283), and a Third Supplemental Response filed by the Debtor (Docket Entry No. 285), with a Reply to the Third Supplemental Response by FCB (Docket Entry No. 286) came before this Court for consideration.

In addition, a Motion to Lease Property filed by the Debtor (Docket Entry No. 277) with a Response to the Motion by FCB (Docket Entry No. 284) is consolidated herein for consideration and resolution.

After an extensive review and consideration of the Motions and the numerous responses and replies thereto, this Court does hereby find that substantial justification has been shown to warrant reconsideration and clarification of the Order this Court entered on August 3, 1989. 102 B.R. 822. However, such reconsideration shall be limited to the extent and nature of the lien on proceeds derived from oil and gas production purportedly held by FCB.

As a result, we hereby enter the following Statement of Facts and Conclusions of Law in conformity with B.R. 7052 in this core proceeding:

### STATEMENT OF ISSUES

The pleadings give rise to three issues:

(a) Whether the language of the mortgage between FCB and the Debtor is void under the applicable Oklahoma statutes;

(b) Whether the lien of FCB is rescued by the remedies available under Oklahoma law and the Bankruptcy Code;

(c) Whether the Debtor may enter into an oil and gas lease on certain property considering the language of the FCB mortgage.

### STATEMENT OF FACTS

Prior to 1979, the Debtor, as owner of the fee estate of certain real property entered into a mortgage with FCB. The mortgage stated that "mortgagor hereby transfers, assigns, sets over and conveys to mortgagee all rents, royalties, bonuses and delay monies that may from time to time become due and payable under any oil and gas or other mineral lease of any kind now existing, or that may hereafter come into existence, ..."

FCB seeks to have this Court reconsider its position in the August 3, 1989 Order whereby FCB was found to have an incho-

ate lien upon the proceeds derived from oil and gas production from beneath the subject property. FCB contends that it properly perfected its lien on said oil and gas proceeds by the filing on October 12, 1988 of a Notice of Interest in Rents, etc. and Perfection of Interest in Rents, etc.

The Debtor asserts that the lien held by FCB as to proceeds derived from the granting of an oil and gas lease is an inchoate lien requiring default before the lien may be considered choate. As such, the Debtor contends that the language of the mortgage assigning these rents and profits is void as a matter of Oklahoma law effective at the time the mortgages were arrived at between the parties.

Additionally, the Debtor seeks relief from this Court to subordinate the FCB mortgage as to the proceeds derived from mineral production. Debtor has an opportunity to grant an oil and gas lease upon the subject property which would result in a lease bonus to be paid this estate, and should production be achieved by the development of the lease, said lease provides for mineral royalty payments. The Debtor further requests that the Court grant to FCB a replacement lien against 100% of the bonus and royalty interests to be received under the lease until FCB has received the full value of its interest, which would appear to be in contradiction of the Debtor's position regarding FCB's lien. The Debtor seeks an Order from this Court requiring FCB to subordinate its lien on the proceeds from the mineral estate in favor of the new lessee.

## CONCLUSIONS OF LAW

■ A. Prior to 1979, any assignment of rents or profits without employing appropriate legal process was considered void under Oklahoma law. This arose from the applicable statutes at the time which stated "notwithstanding an agreement to the contrary, a lien or a contract for a lien transfers no title to the property subject to the lien." Okla.Stat.Ann. tit. 42, § 10. Further, "all contracts for the forfeiture of property subject to the lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption from a lien, are void ..." Okla. Stat.Ann. tit. 42, § 11. The status of the law was later changed in 1979 with the passage of Okla.Stat.Ann. tit. 46, § 4 which allowed these encumbrances. However, since the mortgages between the parties were entered into prior to 1979 in the case at bar, the provisions of § 10 and § 11 shall be applicable in this case.

B. The seminal cases interpreting the above referenced Oklahoma statutes while effective were *Rives v. Mincks Hotel Company, et al.*, 167 Okl. 500, 30 P.2d 911 (Okla.S.Ct.1934) and *Hart v. Bingman, et al.*, 171 Okl. 429, 43 P.2d 447 (Okla.S.Ct. 1935). These cases reasoned that Oklahoma is a lien theory state and "under the mortgage lien theory prevailing in our state and in many other states, it appears to be well settled law that a mortgaging of real property gives no right to the mortgagee to have applied towards the payment of the mortgage debt the rents or income of the mortgaged property; this, manifestly, because the mortgage is nothing more than a lien upon the property to secure payment of the mortgage debt, and in no sense a conveyance entitling the mortgagee to possession or enjoyment of the property as owner." *Rives,* supra 30 P.2d at p. 914. The right to collect the rents and profits from the property mortgaged "remains in the mortgagor until he is deprived of possession in the manner provided by law and this notwithstanding the fact that the mortgage may pledge the rents and profits." Further, "the prevailing rule (in Oklahoma) is that if a mortgagee desires to avail himself of the right to rents and profits pledged by mortgage under real estate without the right of immediate possession of the land, he must claim them by invoking the aid of a Court of equity for the appointment of a receiver to take possession of the rents and profits." (parenthetical information added by Court) *Rives,* supra 30 P.2d at p. 914. Thus, the crucial factor in allowing the collection of rents by the mortgagee is the effective dispossession of the mortgagor of the mortgaged property.

In the instant case, proceeds derived from oil and gas production are indeed "profits," being the incidents of production from the mineral estate and thus, the reasoning found in *Rives* and *Hart* is applicable to the case at bar.

C. FCB essentially admits in its Brief in support of its Motion for New Trial that the provision which purports to convey or assign an interest in oil and gas proceeds to FCB is void as a matter of law by stating "whether or not a default exists, FCB has always been entitled to effectuate the assignment provisions by notifying production purchasers and obtain direct payment of the oil and gas proceeds." (FCB's Brief at p. 3). This would imply that FCB could have obtained the proceeds from oil and gas production without the employment of legal process. This necessarily voids the assignment.

However, FCB's language does not necessarily coincide with its actions. FCB commenced an action to foreclose on its interests in the surface and mineral estate in order to enforce its lien. This is the required legal process necessary for perfection of its purported lien, and Oklahoma law effective at the time of the conception of the mortgage allows such legal process to validate the assignment.

■ D. We must now apply these rules of law under the Oklahoma statutes to the bankruptcy scenario since State law governs the property rights of the parties in a bankruptcy action. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

As stated in the *Rives'* decision, dispossession of the Debtor is necessary for FCB to be properly perfected and to properly execute and levy on the proceeds from oil and gas production. Obviously, FCB was stayed from completing perfection, i.e., proceeding with the foreclosure action and possibly obtaining the appointment of a Receiver, by the filing of the Bankruptcy Petition. However, the Bankruptcy Code provides that "the rights and powers of a trustee (debtor-in-possession) ... are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that

acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement." 11 U.S.C. § 546(b) (parenthetical information added by Court). This allows the filing of a notice in the case to serve as a substitution for a foreclosure action to properly perfect the lien of the creditor.

Since FCB filed a Notice pursuant to this section of the Bankruptcy Code, completing perfection of its security interest in the subject oil and gas proceeds, that lien is now valid and enforceable. The contract provision as written cannot be considered to be an immediate assignment of oil and gas proceeds without legal process. FCB had instituted foreclosure proceedings prior to the filing of bankruptcy and thus had begun the proper avenues available to it to perfect and foreclose on its interest in the proceeds. Thus, FCB had performed all that it could to protect its interests and perfect its lien. As such, FCB is entitled to a lien on the entire production amount since the filing of the § 546(b) Notice. The Debtor must therefore provide for the protection of this lien in his Plan of Reorganization for compliance with 11 U.S.C. § 1129(b) to be found.

FCB relies heavily upon the case of *Virginia Beach Federal Savings & Loan Association v. Wood*, 97 B.R. 71 (Bankr.N.D. Okla.1988) in support of its position and an extensive amount of briefing was done on the issue as to whether FCB would be entitled to a Receiver. Since the sole issue in this case today is the level of protection which must be afforded FCB in the Debtor's Plan of Reorganization in order to maintain FCB's lien, and not an issue regarding cash collateral as was involved in *Virginia Beach*, this Court will not enter into this speculative and highly questionable analysis.

■ E. The final issue which this Court must address is whether the Debtor's Motion to Lease is proper and meritorious. The Debtor owned the fee title to the subject real property at the time the mortgage was contemplated. As such, the Debtor had the ability to mortgage the surface estate and the mineral estate. Unquestionably, FCB's mortgage encumbers the surface estate. With regard to the mineral estate, FCB encumbers the incidents of production from the mineral estate represented by "rents, royalties, bonuses and delay monies." Implicit in this language of assignment is a subordination by FCB whereby the Debtor possesses the authority to grant an oil and gas lease on the mineral estate. However, the proceeds derived therefrom are encumbered by the FCB mortgage. It would be against logic and common sense to interpret that FCB intended through its mortgage to encumber the proceeds from oil and gas production while not allowing the Debtor to lease the mineral estate and allow such production to take place. Any income derived from the mineral estate, whether it be a lease bonus or production royalties, is entirely for the benefit of FCB and thus, any objection FCB might have to this authority to lease would be somewhat foolhardy.

Since this is the opinion of this Court, a subordination agreement from FCB is unnecessary and thus, the Motion of the Debtor is academic.

IT IS THEREFORE THE ORDER AND DECISION OF THIS COURT that FCB possesses a validly perfected security interest in the oil and gas proceeds since the filing of the Notice of such on October 12, 1988, and as such, must be fully protected pursuant to 11 U.S.C. § 1129 in any contemplated Plan of Reorganization by the Debtor.

IT IS FURTHER ORDERED that the Debtor's Motion to Lease is moot by the decision rendered by this Court hereinabove.

IT IS FURTHER ORDERED that the Debtor submit a Second Amended Plan of Reorganization in compliance with the recent Orders of this Court resolving all outstanding issues, no later than November 6, 1989.