**In re A.J. GIBBONS ROOFING AND SHEET METAL, INC., Debtor.**

**Louis J. YOPPOLO, Trustee, Plaintiff,**

**v.**

**OHIO CITIZENS BANK, Defendant.**

**Bankruptcy No. 90–0264.**
**Related Case No. 90–01286.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Aug. 6, 1991.

John M. Carey, Toledo, Ohio, for defendant.

---

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after Trial on Complaint to Avoid Preference. At the Trial, a conflict arose as to whether Ohio Citizens Bank had a properly perfected security interest. The resolution of the Complaint hinged upon the efficacy of Ohio Citizens Bank's security interest. The Court continued the preference issue until a determination of the perfection issue could be made. The Court heard oral arguments as to the proper place to file a security interest and ordered the parties to submit post-trial briefs on the issue. During oral argument, Ohio Citizens Bank made an oral Motion to Dismiss which the Court took under consideration. The Court has reviewed the oral arguments of counsel, the post-trial briefs, as well as the entire record in this case. Based upon that review, and for the following reasons, this Court finds that the Debtor's location for perfection of a security interest is in the State of Michigan.

## FACTS

On October 3, 1989, A.J. Gibbons Roofing and Sheet Metal, Inc. [hereinafter "Gibbons Roofing"], the Debtor, signed a promissory note for Seventeen Thousand Five Hundred Thirty-five Dollars and Seventy-seven Cents ($17,535.77). In exchange, the Debtor granted Ohio Citizens Bank [hereinafter "OC"], the Defendant, a security interest in all the Debtor's inventory, receivables, and fixed assets. OC filed a financing statement with the Ohio Secretary of State and the Lucas County Recorder's office. The promissory note, the security agreement, and the financing statements reflect the Debtor's address as Temperance, Michigan.

On April 24, 1989, June 16, 1989, October 4, 1989, and December 8, 1989, the Debtor made payments of at least Five Hundred Dollars ($500.00) to OC. On April 19, 1990, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. On October 30, 1990, Louis J. Yoppolo, Trustee, filed an Amended Complaint to Avoid the April, June, October, and December payments as preferential transfers. In addition, the Trustee sought to avoid certain setoffs that OC had made against the Debtor's checking account. OC defended its actions by claiming it was a secured creditor and that the payments were made in the ordinary course of business. The Trustee claimed that OC was not a secured creditor as it did not properly file its security interest. The issue before the Court was where was the proper place to perfect a security interest in the Debtor's accounts and receivables.

## LAW

■ Because the power to regulate commercial transactions belongs to the state, the Court must look to state law to determine whether OC properly perfected its

security interest. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). O.R.C. Section 1309.-03(C) provides some guidance on where to file a security interest in accounts, general intangibles, and certain mobile goods:

(C) Accounts, general intangibles, and mobile goods.

(1) This division applies to accounts ... and to goods which are mobile and which are of a type normally used in more than one jurisdiction, such as motor vehicles ... and construction machinery ... and the like, if the goods are equipment or are inventory leased or held for lease by the debtor to others, and are not covered by a certificate of title....

(2) The law, including the conflict of laws rules, of the jurisdiction in which the debtor is located governs the perfection and the effect of perfection of non-perfection of the security interest.

....

(4) A debtor shall be deemed located at his place of business if he has one, at his chief executive office if had has more than one place of business; otherwise at his residence.

(5) A security interest perfected under the law of the jurisdiction of the location of the debtor is perfected until the expiration of four months after a change of the debtor's location to another jurisdiction, or until perfection would have ceased by the law of the first jurisdiction, whichever period first expires.

Ohio Rev.Code § 1309.03 (Baldwin 1988).

Because mobile goods may not stay in one place very long, and because intangibles have no corporeal existence, perfection cannot depend upon their location. The law of the *debtor's* location governs perfection. *See*, O.R.C. § 1309.03(C)(4). The Official Comments to that section indicate that the "location" of the debtor "means the place from which in fact the debtor manages the main part of this[sic] business operations. This is the place where persons dealing with the debtor would normally look for credit information, and is the appropriate place for filing." Ohio Rev. Code § 1309.03, Comment 5(c) (Baldwin 1988).

Turning to the case at bar, testimony was presented as to the location of the Debtor at the time the financing statement was signed, as well as all times subsequent thereto. At the Trial, only two witnesses testified: Arthur J. Gibbons, former president, director, and sole stockholder of Gibbons Roofing and James R. Thornbury, Vice-president of Special Loans at Ohio Citizens Bank. Based upon the testimony and the exhibits presented, the Court makes the following factual findings:

1. The Debtor was engaged in roofing projects mainly in Ohio; however, he did not maintain an office in Ohio.

2. The Debtor maintained an office in Michigan, as evidence by a telephone, an answering machine, a typewriter, and filing cabinets being located at Temperance, Michigan.

3. The Debtor's president was located in, and operated out of, Michigan, and was responsible for all of the Debtor's roofing projects.

4. That portion of the Debtor's business which was conducted in Ohio was managed from and run by the Michigan office.

5. The Debtor's president frequently met with the foremen of the roofing projects at the Michigan office.

6. The majority of creditors were located in Ohio.

7. Inquiries and invoices from creditors in Ohio were received by the Michigan office.

8. Since the late 1970's, the Debtor maintained an office in Michigan.

9. Since 1987, the Debtor had been incorporated under the laws of Ohio.

10. On October 3, 1989, the Debtor designated its Temperance, Michigan address as its principal place of business on a security agreement signed with the Defendant.

11. The financing statement filed by the Defendant on October 19, 1989, with the Secretary of State for Ohio and the Lucas County Recorder's office reflects the Debtor's address as Temperance, Michigan.

12. In the Statement of Affairs filed by the Debtor in these proceedings on April 19, 1990, the Debtor stated its address as 3200 West Temperance, Temperance, Michigan.

13. The Debtor maintained a checking account with OC. The checks on that business account reflect the Michigan address.

14. At the Trial, Mr. Thornbury testified that the documents in OC's collateral file reflect the Michigan address.

The Court considered these facts as persuasive that the chief executive office of Gibbons Roofing was located in Michigan, during the relevant time period. The Court cannot find that this company was being managed and operated from Ohio, when the totality of the evidence is considered. Although the largest volume of business was primarily in Ohio, business volume is not the *sine qua non* of chief executive office location. *See Thompson v. Shepherd Machinery Co.*, 665 F.2d 941 (Ct.App. 9th Cir.1982). Consequently, the Court must look to Michigan law for perfection requirements as that was the Debtor's location.

M.S.A. Section 19.9401 [M.C.L.A. § 440.-9401] instructs one on where to file a security interest for proper perfection: "[I]n the office of the secretary of state." Mich. Statutes Ann. § 19.9401(1)(c) [M.C.L.A. § 440.9401(1)(c)] (Callaghan 1991-92 Supp.). OC did not comply with this section as they failed to file with the Michigan Secretary of State's office. Thus, its security interest in the accounts and general intangibles is not superior as to the Trustee.

▆▆▆▆ In some instances, strict compliance with requirements of the filing statute is excused.

A filing which is made in *good faith* in an improper place or not in all of the places required by this section is nevertheless effective with regard to any collateral as to which the filing complied with the requirements of this article and is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement.

Mich. Statutes Ann. § 19.9401(2) [M.C.L.A. § 440.9401(2)] (Callaghan 1991-92 Supp.) (emphasis added). The Court does not believe that OC made a good faith attempt to perfect its security interest in the Debtor's property. Based upon OC's own records, OC should have filed in Michigan. *See* Exhibits A and B. This would not have caused the bank an undue burden. OC was in a position to know of the Debtor's location and in fact, the evidence adduced at trial indicated that it possessed actual knowledge that the Debtor was located in Michigan. "Where a creditor is uncertain as to the filing requirements, 'the logical and better practice is for the creditor to file security interests in all possible places where filing might be required." *Ledford v. Farmers State Bank and Trust Co. (In re Reier)*, 53 B.R. 395, 399 (S.D. Ohio, W.D.1985) (*quoting In re Burgess*, 30 B.R. 364, 366 (W.D.Okla.1983).

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

ORDERED that the Debtor's location for purposes of perfecting a security interest at the time the transaction occurred be, and is hereby, Michigan.

It is FURTHER ORDERED that OC's security interest be, and is hereby, declared ineffective as to the Trustee.

## EXHIBIT A

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

5 Prepared By: Ohio Citizens Bank

3 Maturity date (if any)

| Debtor(s) (Last Name First) and address(es) | Secured Party(ies) and address(es) | Filing Officer — Time, Number, and Filing Office |
|---|---|---|
| A.J. Gibbons Roofing & Sheet Metal, Inc. 200 Temperance Rd. Temperance, Mich. 48182 | Ohio Citizens Bank 405 Madison Ave. Toledo, OH 43606 | |

4 This financing statement covers the following types (or items) of property

All Inventory (including raw materials, work in process, finished goods, returns, materials and supplies), receivables (including accounts, accounts receivables, contract rights, instruments, general intangibles, and chattel paper) and Fixed Assets (including machinery, equipment, fixtures, furniture, fixed assets, and the attachments, accessories and replacements therefore) now owned or hereafter acquired by the Company and all proceeds arising from any sale, exchange or other disposition of any or all of the aforesaid types of property, whether cash or non-cash in nature.

Check X if covered: XX Proceeds of Collateral are also covered ☐ Products of Collateral are also covered No. of additional sheets presented:

Filed with: Sec. of the State of Ohio & Lucas County Recorder

A.J.Gibbons Roofing & Sheet Metal, Inc. TERMINATION STATEMENT Ohio Citizens Bank
This statement of termination of financing is presented to a filing officer for filing pursuant to the Uniform Commercial Code. The Secured Party certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above.

Dated: _____, 19___ By: _____

Filing Officer Copy — Acknowledgment — Filing officer is requested to note file number, date and hour of filing on this copy and return it to the person filing, as an acknowledgment.

TOLEDO LEGAL NEWS  UCC-1

## EXHIBIT B

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

5 Prepared By: Ohio Citizens Bank

3 Maturity date (if any)

| 1 Debtor(s) Last Name First and address(es) | Secured Party(ies) and address(es) | Filing Officer — le, Time, Number, and Filing Office |
|---|---|---|
| A.J. Gibbons Roofing & Sheet Metal, Inc. 3200 Temperance Rd. Temperance, Mich. 48182 | Ohio Citizens Bank 405 Madison Ave. Toledo, OH 43606 | 71 |

4 This financing statement covers the following types (or items) of property

All Inventory (including raw materials, work in process, finished goods, returns, materials and supplies), receivables (including accounts, accounts receivalbes, contract rights, instruments, general intangibles, and chattel paper) and Fixed Assets (including machinery, equipment, fixtures, furniture, fixed assets, and the attachments, accessories and replacements therefore) now owned or hereafter acquired by the Company and all proceeds arising from any sale, exchange or other disposition of any or all of the aforesaid types of property, whether cash or non-cash in nature.

Check X if covered: XX Proceeds of Collateral are also covered ☐ Products of Collateral are also covered No. of additional sheets presented:

Filed with: Sec. of the State of Ohio & the Lucas County Recorder

A.J. Gibbons Roofing & Sheet Metal, Inc. TERMINATION STATEMENT Ohio Citizens Bank
This statement of termination of financing is presented to a filing officer for filing pursuant to the Uniform Commercial Code. The Secured Party certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above.

Dated: _____, 19___ By: _____

Filing Officer Copy — Acknowledgment — Filing officer is requested to note file number, date and hour of filing on this copy and return it to the person filing, as an acknowledgment.

TOLEDO LEGAL NEWS  UCC-1