United States Court of Appeals,

Fifth Circuit.

No. 91–3173.

In the Matter of Bruce M.H. CLARK, Debtor.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for First City Bank, Appellee,

v.

Bruce M.H. CLARK, Appellant,

v.

NEW ORLEANS SAINTS, Appellee.

May 11, 1992.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before REYNALDO G. GARZA, GARWOOD and DUHE, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

"We are inclined to think that if we watch a football game ... we have taken part in it."[1]


We are more than too far removed from the field today to think that we have taken part in a football game. Here, we visit for a second time matters arising from the bankruptcy proceedings of former New Orleans Saints football player Bruce M.H. Clark. The sole issue in this appeal from an interpleader action is the availability of interest on post-petition earnings declared free of the bankruptcy estate. For the following reasons, we conclude Clark is entitled to interest on those amounts he earned under his contract following the filing of his petition in bankruptcy.


The Facts

Appellant Bruce M.H. Clark (Clark) was the kicker for the New Orleans Saints (Saints), a National Football League (NFL) franchise team in New Orleans, Louisiana. In the latter part of the

[1]Interview with President John F. Kennedy, by Dave Garroway (Jan. 31, 1961), *in* The International Thesaurus of Quotations at 610 (*compiled by* Rhoda Thomas Tripp, 1970).

1980's, Clark encountered financial difficulties and, on October 22, 1988, filed a petition for Chapter 11 bankruptcy protection. On December 18, 1989, this proceeding was converted to a Chapter 7 liquidation proceeding.

At the time of the filing of the petition in bankruptcy, Clark owed sums of money to First City Bank (FCB)[2] and Pontchartrain State Bank (PSB).[3] In agreements entered into prior to the filing of the petition, Clark had assigned his earnings under his NFL Player Contract to FCB and PSB.[4] During the bankruptcy proceedings, Clark filed a motion to have his post-petition earnings under his contract declared free of the bankruptcy estate. The bankruptcy court ruled the earnings were part of the bankruptcy estate. The bankruptcy court then lifted the automatic stay thereby permitting FCB and PSB to pursue their respective pre-petition assignments of Clark's contractual earnings.[5] Accordingly, the Saints paid $300,000.00 to FCB and $45,383.63 to PSB. Following the Saints' payment of these sums, the district court reversed the bankruptcy court's ruling and held that Clark's post-petition earnings were not part of the bankruptcy estate.[6] This court affirmed the ruling of the district court (*Clark I* ).[7]

Shortly after our affirmance of the district court, holding Clark's post-petition earnings free

---

[2]On May 17, 1991, the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver of FCB. For the sake of convenience, all references in this opinion will be to FCB, although the FDIC is now the real party in interest.

[3]In 1984, Clark and his wife incorporated Clark Interior Remodeling, Inc. to renovate rental property they had acquired. In 1987, Clark and his wife incorporated Clark Management Company, Inc. to manage their rental properties. The debts to FCB and PSB arose from loans made in order to finance Clark's real estate ventures.

[4]These agreements secured repayment of Clark's loans from FCB and PSB made in connection with his real estate deals.

[5]Although Clark appealed the bankruptcy court's determination that his post-petition earnings were part of the bankruptcy estate, he failed to obtain a stay of that court's orders pending the outcome of the appeal.

[6]*Matter of Clark,* 100 B.R. 317 (E.D.La.), *aff'd.,* 891 F.2d 111 (5th Cir.1989).

[7]*Matter of Clark,* 891 F.2d 111 (5th Cir.1989) (*Clark I* ).

of the bankruptcy estate, FCB filed an interpleader complaint and deposited $220,312.50 into the registry of the bankruptcy court. In responsive pleadings filed in the interpleader complaint, Clark asserted, *inter alia,* his entitlement to interest on his post-petition earnings. The bankruptcy court, acting as Special Master, made a Recommendation and Report. In relevant part, the Special Master reasoned Clark's request for interest arose from his bankruptcy motion seeking to have the post-petition earnings declared free of the bankruptcy estate. As such, federal law would control any award of interest. The Special Master determined 28 U.S.C. § 1961, providing for post-judgment interest on "any money judgment in a civil case recovered in a district court," precluded the award of post-judgment interest on Clark's post-petition earnings because Clark had not received a "money judgment" as that term has been judicially defined[8] by this circuit. *See Matter of Commonwealth Oil Refining Co.,* 805 F.2d 1175, 1186 (5th Cir.1986), *cert. denied,* 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987) ("money judgment" must identify parties for and against whom judgment is entered and amount owed must be designated with definiteness and certainty). The Special Master observed that no particular party had been designated to pay Clark his post-petition earnings nor had a specific sum been designated. Additionally, the Special Master noted the difficulty that would be encountered in determining which creditor had control of the monies comprising Clark's post-petition salary.

The district court adopted the Special Master's Recommendation and Report and modified it by ordering, *inter alia,* 1) PSB to return $45,383.63 to the registry of the bankruptcy court, 2) the Saints to place $57,735.55 into the registry of the bankruptcy court, and 3) FCB to return an additional $24,687.56 to the registry of the bankruptcy court. The district court, however, made no reference to the Special Master's recommendations regarding Clark's request for interest.

### The Law

The Special Master implicitly reasoned the source of Clark's rights to his post-petition

---

[8]There is no statutory definition of the term "money judgment".

earnings was the ruling of the district court and court of appeals on Clark's motion to have the earnings declared free of the bankruptcy estate. In other words, federal law *established* Clark's rights to his post-petition earnings and thus federal law would control the *award* of any interest on those earnings. The Special Master's reasoning is in error in several respects.

In *Clark I,* this court held the terms of Clark's contract with the Saints required that the Saints pay him as he performed each game of the football season. *Matter of Clark,* 891 F.2d 111, 115 (5th Cir.1989). In arriving at this holding, this court applied Louisiana principles of contract interpretation. *Id.* at 114. By application of state law, we determined unequivocally that Clark's contract provided him with *post-petition* earnings. Because the earnings were post-petition, under the plain terms of Bankruptcy Code § 541(a)(1), which provides that property of a bankruptcy estate is comprised of those property interests of the debtor extant at the time of the commencement of the case, they *accrued* to Clark and not to the estate. Thus, it was state law that determined Clark's rights to the post-petition earnings in question. Indeed, there was never any serious challenge to his rights in the earnings but rather the challenge was whether under the terms of the contract his rights to the earnings arose before or after the filing of the bankruptcy petition. *Clark I* was a case of contract interpretation under state law and federal law did not control the outcome. Thus the Special Master erred in applying federal law to Clark's request for interest on the earnings due him.

The Special Master additionally erred by treating Clark's request for interest as a request for an *award* of interest. Rather than seeking to be awarded interest, Clark merely sought to have that which was the natural accrual of what was his in the first instance. When we determined Clark was entitled to certain property under state law, namely his post-petition contractual earnings, we determined he was entitled to *all* of that property under state law. *See Butner v. United States,* 440 U.S. 48, 55–56, 99 S.Ct. 914, 918–19, 59 L.Ed.2d 136 (1979) (state law determines property interests in bankruptcy proceedings and bankruptcy court should ensure all interests under state law are protected absent federal interest requiring different result). This includes interest on the earnings

improperly withheld from Clark.

Under Louisiana law, absent a contractual provision specifying a rate of interest, Clark is entitled to "judicial interest" from the date of judicial demand. La.Civ.Code Ann. art. 2924 (West Supp.1992). Clark filed his motion to have the post-petition earnings declared free of the bankruptcy estate on December 12, 1988. This motion is the first indication of any "judicial demand" made by Clark. Thus, he is entitled to judicial interest under Louisiana law for all post-petition earnings from the date of the filing of the motion or the date the sum was payable under the contract, if later, up to the date upon which the monies were deposited in the registry of the court, or, if not so deposited, then the date upon which they are actually paid to Clark.

In addition to "judicial interest", Louisiana law provides for the *awarding* of interest as *damages* from the date earnings are due under a contract. La.Civ.Code Ann. art. 2000 (West Supp.1992). We find this provision to be inapposite, however, as Clark has not filed an action for damages nor has there been any determination that any of the parties have engaged in any negligent or otherwise wrongful behavior regarding any coincidental delay occasioned by the bankruptcy proceedings.

We note finally that the sums of money involved in this case have changed hands more than once. However, upon remand, it should not be too difficult a task to ascertain who held the sums and at which times those sums were held. As we have stated, the relevant dates are those of the filing of the original motion and the deposits into the registry of the court, or if no such deposit, then the date the monies are actually paid to Clark. During these time frames, those parties controlling the sums involved are responsible for payment of "judicial interest" thereon. Of course, their respective responsibilities extend only to those periods in which they were or are in control of the sums involved, not before nor after their exercise of control. Clark is additionally entitled to the interest earned on the amounts deposited into the registry of the court at the rate of interest the registry account bears,

if any.

The End Result

For the reasons stated above, we REVERSE Clark's denial of interest and REMAND this interpleader action to the district court with instructions to order the payment of interest consistent with this opinion and the laws of Louisiana.

REVERSED AND REMANDED.