993 F.2d 1541
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jerry W. WHARTON, Plaintiff-Appellee,
v.
COMMONWEALTH OF VIRGINIA, Defendant-Appellant.
 No. 92-1343.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 3, 1993
Decided: June 8, 1993
 
 Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. James H. Michael, Jr., District Judge. (CA-91-81-H)
 Argued: John Richard Butcher, Assistant Attorney General, Richmond, Virginia, for Appellant.
 Marshall Howard Ross, Wharton, Aldhizer & Weaver, Harrisonburg, Virginia, for Appellee.
 On Brief: Mary Sue Terry, Attorney General of Virginia, for Appellant.
 Daniel L. Fitch, Jeffery S. Zurbuch, Wharton, Aldhizer & Weaver, Harrisonburg, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This case arises out of the bankruptcy of Kim-Stan Inc, ("KimStan") a landfill operator, and the actions of its president, Jerry Wharton. The Commonwealth of Virginia (the "Commonwealth") appeals the denial of its motion asking the district court to direct the trustee of the Kim-Stan, Inc. estate to abandon its alter ego claims against Jerry Wharton.* The district court ruled that the automatic stay provisions of the Bankruptcy Code prohibit the Commonwealth from proceeding with its state court alter ego action against Wharton. The Commonwealth raises two issues on appeal: (1) whether the district court erred in holding that the Commonwealth's state-court alter ego action against Wharton was stayed pursuant to 11 U.S.C § 362(a)(3); and (2) whether the district court erred in denying the Commonwealth's motion to direct the trustee to abandon his alter ego claims? Answering both questions in the negative, we affirm the judgment of the district court.
 
 
 2
 * Jerry Wharton served as president of Kim-Stan, a Virginia corporation which operated a landfill in Alleghany County, Virginia. Kim-Stan managed the landfill under the authority of the Virginia Waste Management Board which revoked Kim-Stan's permit in May of 1990 due to operational violations. Soon thereafter, financial difficulties arose and Kim-Stan was forced into involuntary bankruptcy by its creditors.
 
 
 3
 The Commonwealth filed a proof of claim with the bankruptcy court for $5,500,000 against Kim-Stan to recover anticipated environmental cleanup costs. On September 18, 1990 the bankruptcy court granted the Commonwealth a consent order partially lifting the automatic stay provisions of the bankruptcy laws. By partially lifting the automatic stay, which prohibited lawsuits against the debtor, the bankruptcy court permitted the Commonwealth to continue with a prior action against Kim-Stan in state court for certain claims approved by the bankruptcy court.
 
 
 4
 Pursuant to the bankruptcy court's consent order, the Commonwealth continued its previous action against Kim-Stan in Alleghany County Circuit Court. Prior to the state court case being adjudicated and without seeking the required relief from the bankruptcy court, the Commonwealth amended its state court complaint to assert an alter ego claim against Wharton, as Kim-Stan's president. The alter ego claim in the amended complaint alleged that Wharton was personally responsible for certain liabilities of Kim-Stan related to his management of the company. On December 3, 1990 the Commonwealth prevailed in the state court litigation; the court awarded the Commonwealth $1,502,000 in civil penalties, $20,263.47 in damages caused by a fish kill, and entered a permanent injunction against further leachate discharges.
 
 
 5
 On December 5, 1990 the trustee filed a preference action against Wharton alleging that certain assets of the estate were wrongfully transferred. Upon the motion of the trustee to the district court, the district court approved a settlement between the trustee and Wharton. The district court entered the settlement agreement without objection from the parties to the bankruptcy. The settlement agreement resolved all claims that the estate held against Wharton including its alter ego claims. The agreement required that Wharton pay the bankruptcy estate $100,000 in two installment payments.
 
 
 6
 The settlement agreement contained two seemingly contradictory provisions. In one provision the trustee agreed
 
 
 7
 that he shall receive the said sums of money as previously set forth in full and complete settlement of all causes of action, except alter ego, which he holds against the defen dant Wharton for any reason whatsoever arising out of the defendant, Wharton's actions or operations as an insider, investor, [etc]....
 
 
 8
 In a subsequent provision, where the agreement specifically referred to the Virginia Waste Management Board's state court action, the agreement stated "[t]he trustee has decided upon review of the books and records of Kim-Stan not to bring an alter ego claim against Jerry Wharton, personally, and has agreed never to bring an alter ego claim against him in the future." This provision relieved Wharton from alter ego actions emanating from his management of Kim-Stan.
 
 
 9
 The Commonwealth continued to pursue its alter ego claims against Wharton. Following the district court's approval of the settlement agreement, Wharton brought a contempt action against the Commonwealth for violating the automatic stay provisions of the bankruptcy code by pursuing the alter ego claim. He sought a declaration stating that the bankruptcy laws barred the Commonwealth's state court action against him. The Commonwealth contended that the bankruptcy code did not bar its claims and requested that the district court order the trustee to abandon its alter ego action. It contended that the alter ego action had no value to the estate.
 
 
 10
 The district court denied the Commonwealth's motion and ruled for Wharton. It held that the "trustee's covenant not to sue [Wharton] on any alter ego basis was crucial to the settlement of the preference dispute between the trustee and Wharton." The court found that both parties received benefit from the covenant not to sue, particularly Wharton, who undoubtedly calculated the value of that covenant into the amount he was willing to pay the estate. Moreover, the district court held that "the alter ego claim has benefit to the estate because it assures the estate that Wharton will live up to his end of the bargain." This appeal ensued.
 
 II
 
 11
 * The bankruptcy code establishes the scheme by which the rights of the debtor and the creditor are governed. Section 541 sets forth the rights of the debtor and therefore of the trustee who administers the estate; while section 544 sets forth the rights of the creditors. 11 U.S.C. §§ 541 & 544. All interests of the parties are not determined exclusively by federal law. See Butner v. United States, 440 U.S. 48, 53 (1979). Federal bankruptcy law provides that we turn to state law to decide which interests are the rights of the debtor and which are the rights of the creditor.
 
 
 12
 The bankruptcy code further provides that certain legal actions are stayed during the course of bankruptcy proceedings. Section 362 contains the automatic stay provisions of the code; subsection 362(a)(2) stays "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." Section 362(a)(3) grants a stay applicable to "any act to obtain possession of the property of the estate or of property from the estate or to exercise control over property of the estate." The bankruptcy code provides exceptions to these stays including a police powers exception under sections 362(b)(4) and (b)(5). These sections provide that the filing of a bankruptcy petition under sections 301, 302, or 303 does not operate as a stay
 
 
 13
 (4) under subsection (a)(1) of this section, commencement or continuation of an action or proceeding by a governmental unit to enforce a governmental unit's police or regulatory power; (5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit, to enforce such governmental unit's police or regulatory power;" 11 U.S.C. §§ 362(b)(4) and (b)(5).
 
 
 14
 In Steyr-Daimler-Puch of America Corp. v. Pappas, 852 F.2d 132 (4th Cir. 1988), we held that under Virginia law alter ego claims belong to the corporation and hence are for the trustee to pursue in bankruptcy. Id. at 135. In Steyr a creditor, Steyr-Daimler-Puch of America Corp ("SDPA"), brought an alter ego claim against the company's principal officer, Pappas. The trustee already had settled and released Pappas from such claims. SDPA, as did the Commonwealth in the instant case, argued that the alter ego claim was its property rather than the estate's property.
 
 
 15
 We held that "an alter ego claim, under Virginia law, is the property of the corporation so that it becomes the property of the bankruptcy estate over which the trustee has control pursuant to 11 U.S.C. § 541." Id. at 135. The trustee can pursue, dismiss, or compromise the alter ego claims for the benefit of the estate as a whole and for all of the creditors. We further stated
 
 
 16
 since the alter ego claim ... is "property of the estate" within the meaning of § 541(a)(1), certain conclusions follow. First, the automatic stay applies. Moreover, because the claim is property of the estate the trustee is given full authority over it. Thus, before the debtor or a creditor may pursue a claim, there must be a judicial determination that the trustee in bankruptcy has abandoned the claim." Id. at 136. (citation omitted.)
 
 
 17
 The court noted that without the trustee's abandonment of the claim a creditor cannot pursue it. Id.
 
 
 18
 In the instant case the Commonwealth cannot maintain its action. The Commonwealth's claim is premised on the assumption that the claim is part of its police powers that the bankruptcy code did not intend to abrogate. The action does not fit within the police powers exception to the statute. Sections 362(b)(4) and (5) of the bankruptcy code, the police powers exceptions, do not provide a blanket exception for all bankruptcy stays. The police powers exception on which the Commonwealth relies does not apply to section 362(a)(3), the provision on which the instant stay was granted. The police powers exception of 362(b)(4) and (5), clearly states that it is only applicable to sections 362(a)(1) and (a)(2).
 
 
 19
 As stated above, this court has opined that alter ego claims belong to the corporation and consequently its estate. The Commonwealth's claim that its action is personal and only it can bring the action against Wharton as alter ego of Kim-Stan for the cleanup costs is not valid. Many claims in bankruptcy are personal in that only the individual to whom a debt is owed or his assignee can assert his right.
 
 
 20
 Moreover, the Commonwealth is behaving as a creditor in the instant matter rather than in its police capacity. The Commonwealth contends that the claim is not really for monetary damages, but for the cleanup of the polluted landfill; however, this assertion is disingenuous. As the district court cleverly stated "he[Wharton] is not being asked to don boots and man a shovel. Instead he is being asked to dig into his pocket and pay for clean up costs." Since the Commonwealth's actions are those of a creditor, it must be treated like a creditor. The Commonwealth's request would have the effect of giving its claim priority over the claims of other creditors. The decision to pursue, compromise, or drop an alter ego claim belongs to the estate and is determined by the trustee after considering the best interest of all the creditors, not just one.
 
 B.
 
 21
 The Commonwealth's second claim is that the district court erred by not ordering the trustee to abandon the alter ego claim. It contends that the alter ego claim did not add value to the bankrupt's estate and therefore should be abandoned.
 
 
 22
 Section 554(b) of the bankruptcy code grants district courts the discretionary power to "order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b). Once a claim has been abandoned by the trustee it can be pursued by the creditors outside the bankruptcy context.
 
 
 23
 The district court's ruling that both the estate and Wharton received benefits is not erroneous. The court held that "the alter ego claim has benefit to the estate because it assures the estate that Wharton will live up to his end of the bargain." The trustee compromised the alter ego claim by agreeing to release Wharton from liability if he paid $100,000 into the estate. Wharton's decision to pay that sum into the estate was partially based on the value of the settlement and release from the alter ego claims by the trustee. The trustee cannot now be ordered to abandon what he has settled. Should the trustee subsequently try to abandon the alter ego claim after settling it, the potential litigation would put the entire settlement agreement in jeopardy. Any ensuing litigation against the estate by Wharton would deplete the estate's assets.
 
 III
 
 24
 For these reasons, the district court was correct in holding that the Commonwealth's state alter ego action was stayed as it was valuable property of the bankruptcy estate which had been compromised. The Commonwealth was not entitled to an order directing the trustee to abandon the estate's alter ego claims. Therefore, the decision of the district court is affirmed.
 
 AFFIRMED
 
 
 *
 An alter ego claim is one where a party asserts that the corporate veil should be pierced and an individual, such as a corporate officer, be held responsible for acts knowingly and intentionally performed in the name of the corporation