**In re SPECIALTY SERVICES, INC., Debtor.**

**James W. Hoerner, Trustee, Plaintiff,**

**v.**

**Richard Van Setten and Standard Federal Bank, N.A., f/k/a Michigan National Bank, Defendants.**

**Bankruptcy No. GG 02–07090.
Adversary No. 03–88184.**

United States Bankruptcy Court,
W.D. Michigan.

March 26, 2004.

Larry A. VerMerris, Grand Rapids, MI, for Plaintiff–Trustee James W. Hoerner.

R. Daniel Berchiatti, Allendale, MI, for Defendant Richard Van Setten.

Donald A. Snide, Grand Rapids, MI, for Defendant Standard Federal Bank, N.A.

## OPINION REGARDING PROPERTY OF THE ESTATE

JAMES D. GREGG, Chief Judge.

### I. ISSUE

Is a certain Harley–Davidson motorcycle property of the corporate debtor's bankruptcy estate or property of a non-debtor individual? [1]

### II. JURISDICTION AND PROCEDURAL BACKGROUND

■ The court has jurisdiction over the bankruptcy case and this adversary proceeding. 28 U.S.C. § 1334. The adversary proceeding is a core proceeding, 28 U.S.C. § 157(b)(2)(E) and (K) because it pertains to property of the estate and the validity of a lien. This opinion constitutes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

Specialty Services, Inc., "Debtor," filed its bankruptcy petition under chapter 7 of the Bankruptcy Code [2] on June 21, 2002. James W. Hoerner, "Trustee," was appointed as the trustee to administer the assets of the Debtor.

On March 21, 2003, the Trustee initiated this adversary proceeding by filing a complaint against Defendant Richard Van Setten, "Van Setten," and Defendant Standard Federal Bank, N.A., formerly known as Michigan National Bank, "Bank." The Trustee asserts that a Harley–Davidson motorcycle, which was won by Van Setten in a contest, is property of the estate. The Trustee also asserts that the motorcycle is not subject to any security interest of the

---

1. If the motorcycle is property of the estate, a further issue exists whether the Defendant Bank holds a perfected security interest in the motorcycle. The attorneys for the Trustee and the Bank have agreed that the security interest issue may be determined later, only if necessary, inasmuch as there is a tentative settlement of that issue.

2. The Bankruptcy Code is set forth in 11 U.S.C. §§ 101–1330. All further references to the Bankruptcy Code will be "§ ___."

Bank or, if it is subject to a security interest, that the security interest is voidable because the Bank is unperfected.

On April 3, 2003, the Bank filed its Answer. It takes the position that it holds a validly perfected security interest regarding the motorcycle. The Bank also filed a counterclaim and a cross-claim asserting that its interest in the motorcycle is superior to any interest that may be held by Van Setten or the Trustee.

On April 21, 2003, Van Setten filed his Answer. He asserts that he owns the motorcycle because he personally won it in a contest. He alleges that the Debtor, its bankruptcy estate, and the Bank have no interest in the motorcycle.

On October 1, 2003, trial of the adversary proceeding took place. Almost all facts were stipulated by the parties. *See* Amended Stipulated Facts. The Amended Stipulated Facts incorporated eight exhibits, all of which were admitted into evidence.

### III. FACTS

The relevant facts are rather simple and straightforward. Van Setten, a journeyman electrician, was the purchasing agent of the Debtor corporation before it filed for bankruptcy. While employed by the Debtor, and acting in his capacity as its purchasing agent, Van Setten became aware of a contest, in the nature of a "sweepstakes" drawing, sponsored by The Wiremold Company, "Wiremold." The drawing was called "See America in Red, White or Blue." Wiremold was a supplier of the Debtor.

During the course of his employment, Van Setten received an entry form from Wiremold. Exh. 3. It was easy to partici-

pate. "To enter just buy $750 of Wiremold products and send in your invoices attached to a completed entry form. Just for entering we'll send you a deluxe 3' × 4' American Flag kit." [3] Exh. 3. Van Setten entered the contest, listing his own name, the Debtor's name, and the Debtor's business address. He completed the entry form and attached invoices showing *the Debtor had purchased $750 of Wiremold products.* (The products were purchased by the Debtor through Graybar Electric, Grand Rapids, Michigan.) Van Setten completed the form while at home rather than doing it "during company hours or while processing company paperwork." Amended Stipulated Facts at 2. He checked the prize box "Blue Harley–Davidson Motorcycle." Exh. 3.

Surprise! Van Setten was notified he won the motorcycle. The Debtor also learned about the prize. On April 10, 2002, its attorneys sent a demand letter to Van Setten, citing the Debtor's employee handbook. The letter stated in part:

> As you know, you submitted a contest entry to The Wiremold Company as part of a product purchase made through Graybar Electric. The purchase was made by [the Debtor] and the purchase was a prerequisite to submitting the contest entry. You are therefore not eligible to receive the motorcycle which has been awarded as a prize. The motorcycle and any other prizes obtained through such contest are the property of [the Debtor].
>
> The Wiremold Company has therefore been instructed to deliver the motorcycle to [the Debtor].

Exh. 4.

On April 10, 2002, the Debtor's attorneys also sent a letter to Wiremold. The

---

**3.** There was also another method to enter this contest which required a 3″ × 5″ card rather than the entry form. The alternative method, which did not require a purchase of Wiremold products, was *not* used.

attorneys told Wiremold "that ... Van Setten is not authorized to receive gifts or awards and that the title to the motorcycle which is tentatively scheduled to be delivered to Mr. Van Setten on April 19th should not be delivered to Mr. Van Setten and should instead be titled and delivered to [the Debtor]." Exh. 5. On April 16, 2002, Van Setten accepted delivery of the motorcycle from a Grand Rapids area Harley–Davidson dealer. The motorcycle was titled in Van Setten's name with no secured party listed on the title to the motorcycle.

Prior to the contest taking place, on May 3, 2000, Van Setten entered into an Employee Agreement, "Agreement," with the Debtor. Exh. 6. That Agreement was signed by Van Setten and Frank Van Dam, III, the Debtor's President. Some provisions in the Agreement are relevant:

1. Employment. Employer employs the Employee and Employee accepts employment upon the terms and conditions contained herein.

. . . .

9. *Modification.* No modification of this Agreement is valid unless it is in writing and signed by the President of the Employer.

. . . .

14. *Governing Law.* This Agreement is subject to and governed by the laws of the State of Michigan, irrespective of the fact that one party is or may be a resident of another state, and acknowledges and agrees that this Contract has been entered into and executed within the County of Kent, State of Michigan.

. . . .

22. *Term.* The Employee's employment is terminable at the will of either party upon thirty (30) days' notice to the other party with or without cause; no notice shall be required in the event termination of employment is due to just cause. Just cause shall include but not be limited to ... violation of the Employer's Handbook . . . .

Exh. 6.

Attached to the Agreement is an "Exhibit A" which also refers to the Debtor's "Employee Manual" in two instances. Van Setten knew of the Employee Manual/Handbook when he entered into his May 2000 employment contract.

It is without question that Van Setten received a copy of the Debtor's "Employee Information Handbook—March 1999," the "Handbook," prior to executing the May 2000 Agreement. Exh. 7. He acknowledged receipt of a copy of the Handbook, by signing an "Acknowledgment of Receipt and Understanding," on April 22, 1999. Exh. 8. In so doing, Van Setten explicitly agreed he would "comply with all policies and procedures to the best of [his] ability" and recognized that the Handbook would not be modified or supplemented without prior written approval of the Debtor's President. Exh. 8.

The Handbook states in pertinent part:

1.24 An Acknowledgment of Receipt and Understanding is provided at the end of the handbook which requires the signature of the employee receiving the handbook. This signed/witnessed Acknowledgment of Receipt and Understanding will remain in the employee's handbook. A copy of the Acknowledgment of Receipt and Understanding must be signed by the employee and must be returned to Bookkeeping Department within ten (10) days of commencement of employment. This signed/witnessed copy will become part of the employee's personal file.

. . . .

GIFTS.

7.6 Normally *a gift to an individual from an outside source is considered the property of the company,* unless management makes a prior written exception. It is the policy of the company that no employee shall receive any gift, entertainment, loan or other favor from any outside source (including customers and suppliers) without prior written approval from management. Any employee failing to abide by this policy will be subject to disciplinary action up to and including termination.

. . . .

Exh. 7, pp. 6 and 32 (emphasis supplied).

At trial, no witnesses testified before the court and no credibility findings are necessary.

## IV. DISCUSSION

■■■ Property of the estate is created upon commencement of a bankruptcy case and includes all legal and equitable interests of the debtor in property, "wherever located and *by whomever held.*" § 541(a)(1) (emphasis supplied). Property rights, including issues regarding entitlement to the motorcycle that is the subject of this adversary proceeding, are determined by state law unless a federal purpose requires a different result. *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The court is called upon to answer a straightforward question of whether the Debtor corporation has rights in the motorcycle pursuant to the Agreement and the Handbook.

In the Agreement, the existence of the Handbook is recognized in at least three locations. Indeed, a violation of a term in the Handbook constitutes "just cause" for termination. Exh. 6, ¶ 22. Also, without question, Van Setten, by his signature on the "Acknowledgement of Receipt and Understanding," agreed to be bound by all provisions included in the Handbook. Exh. 8.

The Handbook mandates that "gifts" to an "individual" employee from an "outside source" including "suppliers" is property of the "company," i.e., the Debtor, unless there is "a prior written exception." Exh. 7, ¶ 7.6. A "gift" includes "something that is voluntarily transferred by one person to another without compensation." Webster's Third New International Dictionary at 956 (Merriam–Webster, Inc.1986). The transferor, Wiremold, is an "outside source" and one of the Debtor's "suppliers." There is no evidence of any written exception to the ownership rights of the Debtor, as provided for by the Handbook. Indeed, the record before the court demonstrates that the Debtor asserted ownership rights to the motorcycle when it learned about Van Setten's good fortune. Exhs. 5 and 6. This negates any possible inference that there was an exception to the "Gifts" provision in the Handbook. It is not surprising that the Trustee has continued to assert the Debtor's rights.

The initial inclination of the undersigned judge was to congratulate Van Setten for his lucky win and recognize that without his effort (in filling out and submitting the necessary form), there would have been no motorcycle to fight about. However, such an initial impression is tempered by the fact that without attachment of proof that the *Debtor purchased $750 of Wiremold products,* Van Setten would not have had the price of admission to enter the sweepstakes. Most importantly, Van Setten twice agreed to abide by the Handbook: when he signed the Agreement and, when he specifically acknowledged receipt of the Handbook and agreed to abide by its conditions. Exhs. 6, 7 and 8. Under the Handbook's provisions, Van Setten's good fortune is transferred, by operation of law, to the Debtor, and then by further opera-

tion of law, to the Debtor's bankruptcy estate. § 541(a)(1).

In an attempt to overcome his agreements with the Debtor, Van Setten argues that the facts are sufficiently analogous to a Michigan Supreme Court case to be governed by its outcome. *See Heurtebise v. Reliable Business Computers, Inc.,* 452 Mich. 405, 550 N.W.2d 243 (1996). In *Heurtebise,* the court determined that an employee handbook's binding arbitration provision did not prohibit an employee from instituting a lawsuit for alleged discrimination in the state court system. Relying on specific language in the handbook that indicated that the employer did not intend to be bound by the handbook's terms, the Michigan Supreme Court found that the handbook did not constitute a binding contract between the parties. *Heurtebise,* 452 Mich. at 413–14, 550 N.W.2d at 247. Since the Handbook did not create an enforceable employment contract, the binding arbitration provision in the handbook was similarly unenforceable. *Id.*

This adversary proceeding involves much different facts. There is a separate Agreement regarding Van Setten's and the Debtor's respective rights and obligations. The Handbook is incorporated by reference in the Agreement, and Van Setten's acknowledgment of the binding provisions in the Handbook predated the execution of the Agreement. Exhs. 6 and 8. The provisions of the Agreement and the Handbook are easily read together in tandem and do not conflict or create any ambiguity regarding the Debtor's ownership of "gifts" given to an employee such as Van Setten. In this case, there is a separate binding employment agreement which incorporates an employee handbook which is equally binding upon Van Setten. The rationale in *Heurtebise* that the handbook failed to create a contract does not apply.

This court holds that the Harley–Davidson motorcycle won in the sweepstakes was property of the Debtor under Michigan law. When the Debtor filed for bankruptcy relief, the motorcycle became property of the estate. § 541(a).

## V. CONCLUSION

For the reasons discussed above, the Harley–Davidson motorcycle is property of the estate. The motorcycle may be administered by the Trustee. The court reserves the issue of whether the Bank has a perfected security interest in the motorcycle or whether the Bank's interest, if any, is subordinate to the Trustee's lien creditor status.

A separate order will be entered.[4]

---

4. To the extent it may be required, upon motion by a party, the court will augment its order by specifically identifying the motorcycle in question, e.g., by noting the vehicle identification number.