**In re EMARCO, INC., Emarco Elevator Co., Debtor.**

**Bankruptcy No. 5–82–00004.**

United States Bankruptcy Court, M.D. Pennsylvania.

Jan. 9, 1985.

Myles R. Wren, Nogi, O'Malley, Harris & Schneider, Scranton, Pa., for Emarco.

Thomas M. Marsillo, Hazleton, Pa., for Northeastern Bank.

## MEMORANDUM AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

In this Chapter 11 proceeding, the debtor, Emarco, Inc., challenges a claim filed by Northeastern Bank of Pennsylvania (creditor) as secured in the amount of $30,000.00. The underlying facts in this contested matter are not in serious dispute and after an evidentiary hearing, we make the following findings.

The basis of Northeastern Bank's claim here is an assignment of a contract in the form of a purchase order, #461, in the amount of $39,250.00 given to the debtor by B.F. Ziegler Company. Offered into evidence it indicated that it was to complete elevator installation according to plans and specifications furnished to the debtor for the sum of $39,250.00. The creditor perfected a security interest in the purchase order by filing a financing statement in the appropriate offices. The Security Agreement signed by the parties indicated that it was given to secure the debtor's obligation to pay $30,000.00, plus interest on demand. In the Security Agreement, debtor warrants that the collateral was "used or bought for use primarily for business use." Testimony offered at the hearing showed that payments under this purchase order were made to the debtor and creditor jointly until the debt was reduced to $18,210.88. Because of a work stoppage caused by a strike, debtor was unable to complete the contract and the remaining work was assigned to another contractor.

Essentially, creditor takes the position that its security extended beyond the purchase order assigned to it by the debtor to all of its remaining assets. The proof offered in this regard falls far short of sustaining this position. The documentary evidence submitted shows simply that the creditor had a security interest in the purchase order and that this was its sole collateral. An effort was made to show that since the debtor used some of this money to "sustain the company" this action was wrongful and operated to extend its secured position to other assets of the debtor. Initially, the testimony offered in this respect was very vague. In fact, creditor's witness testified that all of the money paid to the debtor on this purchase order was in the form of joint checks in the name of the creditor and the debtor and that all monies received in this fashion were paid to the creditor. It is clear from a reading of the Security Agreement that the only secured interest creditor had in this transaction was in the purchase order assigned to it by the debtor.

Both parties look to § 506 of 11 U.S.C. as support for their positions. In relevant part, this section provides as follows:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

In its consideration of this section, *Collier* at § 506.04 of its 15th Edition points out that it must always be remembered that the extent to which any claim is a secured claim has at least three possible sources of limitation:

(1) The allowed amount of the claim;

(2) The value of the interest of the estate in the collateral; and

(3) The value of the interest of the creditor in such interest of the estate.

Applying the foregoing to our situation, the parties here have stipulated to the allowed amount of the claim which will be

treated not as secured but as unsecured. The value of the interest of the estate in the collateral at this juncture is zero. Having been forced to abandon the contract which was the source of money to repay its loan, the debtor obviously could assign no value to it at all. Finally, the value of the interest of the creditor in such interest of the estate from the standpoint of security is also zero since obviously the debtor cannot look any longer to the execution of the contract to receive funds therefrom. The creditor cannot look to the debtor for payment by it from that source. It is clear that debtor does not attempt to evade or deny it is obligated to the creditor in any way. It simply challenges the secured position asserted by the creditor. The obvious fallacy of creditor's position is that it is not able in any way to look to the collateral assigned to it for repayment of its debt irrespective of any position taken by the debtor.

Accordingly, the claim of the creditor is disallowed as secured and allowed as unsecured to be treated as such by the debtor in any proposed plan in the amount of Eighteen Thousand Two Hundred Ten and 88/100 ($18,210.88) Dollars.