**In re Michael Robert GABOR, Debtor.**

**Bankruptcy No. 93–10035.**

United States Bankruptcy Court, N.D. West Virginia.

June 11, 1993.

---

. James W. Martin, Jr., Clarksburg, W. VA, for debtor.

Fred D. Clark, Charleston, W. VA, for creditor, General Motors Accep. Corp.

## MEMORANDUM OPINION AND ORDER

L. EDWARD FRIEND, II, Bankruptcy Judge.

Debtor filed his petition under Chapter 13 of Title 11, United States Code on January 15, 1993. On February 16, 1993, General Motors Acceptance Corporation (hereinafter "GMAC") filed a proof of claim for a secured claim in the amount of $7,194.00. On March 8, 1993, debtor filed an objection to the secured claim of GMAC. In support of debtor's objection, debtor represented that his wife co-signed the instrument created with GMAC, that the automobile is no longer in his possession, that his wife left him and took the automobile, that he does not know his wife's or the automobile's present whereabouts, and that he has no means of locating either of them.

There are two issues which this Court shall consider. The first question is whether GMAC's security interest in the automobile continues, despite the involuntary disposition of its collateral. The second is whether, in a Chapter 13 bankruptcy, a secured creditor whose collateral is lost, stolen, or missing remains secured.

The subject contract between debtor and his wife and GMAC was made in the State of Washington. A determination whether GMAC's security interest survives, despite the absence of its collateral, shall be governed by Washington's Uniform Commer-

cial Code—Secured Transactions § 62A.9–306(2). *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Section 62A.9–306(2) provides that "a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." WASH. REV.CODE ANN. § 62A.9–306(2) (West 1993). Other courts have concluded that this section would include within its scope both voluntary and involuntary dispositions. *See In re Elliott,* 64 B.R. 429, 430 (Bankr. W.D.Mo.1986); *In re Stone,* 52 B.R. 305, 307 (Bankr.W.D.Ky.1985). Prior to the 1972 amendment, U.C.C. § 9–306(2) provided that "a security interest continues in the collateral notwithstanding sale, exchange or other disposition thereof *by the debtor* ...." (emphasis added). The court in *Elliott* stated that the Kansas UCC was similarly amended, and that the deletion of the phrase *by the debtor* indicated an intent to apply such section, in addition to voluntary dispositions, to involuntary dispositions of collateral. *See Elliott* at 430. Washington's UCC was amended similarly. In light of the 1972 amendment and recent decisions, this Court concludes that Washington courts would include both voluntary and involuntary dispositions within the scope of Washington Uniform Commercial Code § 62A.9–306(2). Accordingly, GMAC's security interest in the automobile remains despite the involuntary disposition.

■ However, the paramount question is whether GMAC may maintain a secured claim against debtor's estate under Bankruptcy Code, Chapter 13. As the court in *Elliott* stated succinctly: "By definition, 'secured claim' requires availability of collateral to secure the creditor's right to payment." *See Elliott* at 430. GMAC would have this Court liken the existence of its security interest in the automobile with the allowance of a secured claim in debtor's bankruptcy proceeding. However,

> [a] claim paid the amount it would receive if secured, but without access to underlying collateral, would simply be an unsecured claim paid on a priority basis outside the statutory priority scheme.... "The obvious fallacy of creditor's position is that it is not able in any way to look to the collateral assigned to it for repayment of its debt irrespective of any position taken by the debtor."

*Id.* (*citing In re Emarco,* 45 B.R. 627, 629 (Bankr.M.D.Pa.1985)). The court in *Elliott* concluded that although creditor may have a security interest in missing collateral, as to such collateral, creditor could not have a secured claim in the Chapter 13. *See Elliott* at 430. Similarly, although GMAC maintains a security interest in the missing automobile, this Court concludes that its claim in the debtor's Chapter 13 bankruptcy is unsecured only.[1]

■ Practically speaking, even if GMAC were given secured status, the result would be the same. Bankruptcy Code § 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

11 U.S.C. § 506(a). GMAC's secured interest in the collateral may hold a value of no more than the estate's interest in such automobile. In *Elliott,* when debtor's fiancee disappeared, taking an engagement ring set subject to a purchase money security arrangement, the court addressed the argument that the value of the estate's interest

---

**1.** Following the principles of the *Elliott* case, the court in *In re Garrison,* 95 B.R. 461 (Bankr. E.D.Ky.1988), found that even where debtor *voluntarily* sold creditor's collateral to a pawn shop, such creditor's claim against the bankruptcy estate would be reduced to unsecured status. The court's reasoning was that not only would a properly perfected secured creditor be able to pursue its collateral in the hands of the transferee, but also such creditor's unsecured claim likely would be found nondischargeable under Bankruptcy Code § 523. *See also In re Byrd,* 92 B.R. 238 (Bankr.N.D.Ohio 1988).

should be the value of the rings before they were taken. The court stated:

> The Court disagrees. The evidence was undisputed that the rings were transferred involuntarily before bankruptcy and debtor cannot obtain possession of them. They are the same as destroyed or stolen property. Debtor cannot wear the rings and a trustee could not sell them. The Court finds the estate's interest in the rings is of no value. Therefore, the value of the creditor's interest in the estate's interest is zero. In short, the secured portion of [the creditor's] claim would be valued at zero and the remainder, i.e. the entire allowed claim, would be payable as an unsecured claim.

*See Elliott* at 431.

Similarly, Gabor's automobile was transferred involuntarily and he cannot obtain possession of it. It is the same as destroyed or stolen property. Gabor cannot drive the car and a trustee cannot sell it. The estate's interest in the car is of no value. Upon this basis, the value of GMAC's interest in the estate's interest is zero. Thus, GMAC's entire claim is unsecured.

Notwithstanding GMAC's unsecured status in bankruptcy, GMAC retains a security interest in the automobile, and its right to find Gabor's estranged spouse and pursue its collateral in her hands is unchanged. If debtor regains possession of the automobile, GMAC may then file an amended proof of claim and a motion for reconsideration to have its secured claim valued in light of the changed circumstances. *See Elliott* at 431. *See also,* BANKR.R.CIV.P. 3008. Also, to the extent debtor may file a claim with his insurer and receive insurance proceeds, GMAC's security interest may attach to those proceeds. *See* WASH.REV.CODE ANN. § 62A.9–306 (West 1993).

It is the opinion of this Court, although GMAC's security interest in the automobile remains intact, its secured claim against debtor's estate must be **DISALLOWED.** Therefore, Debtor's objection to GMAC's secured claim is **SUSTAINED** and GMAC's

claim against debtor's estate shall be unsecured only. It is so **ORDERED.**

Judgment shall be entered in accordance with this opinion.